(58 App. Div. 407.)

## KENNETT v. HOPKINS et al.

(Supreme Court, Appellate Division, First Department. March 8, 1901.)

1. PARTNERSHIP—ACCOUNTING—BUSINESS CARRIED ON IN ANOTHER STATE.
      Where a partnership carried on business in New York and Chicago
      under the same firm name, but it was claimed there were two firms, only
      the two partners and a small number of creditors for whom provision
      had been made being interested, it was proper, after dissolution, by which
      each became the liquidator of the business in his city, in an action in New
      York by the Chicago partner for an accounting, to order the referee to
      take and state the accounts of the Chicago business as well as of the New
      York business.

2. SAME—INTERLOCUTORY JUDGMENT—VALIDITY—ESTOPPEL TO DENY.
      Plaintiff having drawn and entered an interlocutory judgment directing
      the referee to take and state the accounts of the Chicago business, he will
      be held bound by its terms.

3. SAME—REFEREE—POWERS—ISSUES.
      It was error for the referee to determine the issue presented as to
      whether there was one firm or two, since, as it was not and could not
      be involved in any matter submitted to him for determination, it was
      beyond his power to determine.

4. SAME—APPEAL AND ERROR—HARMLESS.
      The error of the referee in determining the question as to whether there
      was one or two firms was not ground for reversal of the judgment based
      on his report, since it being immaterial, and the result reached being the
      same as would have been reached had he not determined the question, its
      determination was harmless.

5. SAME—LIABILITY—ACCOUNTS—FACE VALUE—SALE.
      Where plaintiff was the liquidating partner in Chicago of a partnership
      doing business in Chicago and New York, after its dissolution, in an action
      for an accounting against the liquidating partner in New York it was
      proper to charge plaintiff with the face value of accounts, which he had
      sold at public auction, the notice of which stated that some were of
      little or no value, and which he did not show were of less than their face
      value.

6. SAME—REAL ESTATE.
      Plaintiff having sold real estate in Chicago situated outside of the state
      of Illinois, which was held as security for accounts owing to the partner-
      ship, he should be charged with the value of the indebtedness for which
      it was security, he having offered no evidence of its value.

7. SAME—ASSIGNMENT OF ASSETS—JURISDICTION.
      It was proper for the court to direct judgment in accordance with the
      referee's report authorizing plaintiff to exonerate himself from liability

for the Chicago accounts, which he had sold, after notified not to do so, by transferring them to the receiver, or otherwise be charged with their face value, since the court had jurisdiction of plaintiff's person, and, he having invoked its equity powers, it could compel him to bring such property within its jurisdiction, and, failing in compliance with such direction, it could charge him personally with the value of the property.

8. SAME.

It was proper to credit defendant with bad and doubtful debts of the New York business, some of which had been transferred and carried over through several reorganizations of the firm, though defendant had not revealed the exact state or extent of bad or doubtful debts every three months, as required by the partnership articles, some statements having been made, and plaintiff having taken profits from the business based on the assets of the firm represented by the bad and doubtful debts, his capital being benefited thereby, and his profits larger than if such debts had been charged off.

9. APPEAL AND ERROR—REHEARING.

Where an appeal from an order denying a motion for a rehearing in an action for an accounting raised no question except such as was presented by an appeal from an order confirming the referee's report and judgment, and which was affirmed, the order denying the motion will be affirmed.

Appeal from special term, New York county.

Action by Francis J. Kennett against George B. Hopkins and another for an accounting. From an order confirming a referee's report and directing final judgment, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Thorndike Saunders, for appellant.
Franklin B. Lord, for respondents.

HATCH, J. The plaintiff, a nonresident of this state, brings this action for an accounting of the firm of Kennett, Hopkins & Co., heretofore doing business as stock and grain brokers in the city of New York. Prior to the formation of this firm there had existed the firm of Jones, McCormick & Kennett, doing a like business in the city of New York. The plaintiff and the defendant Hopkins were members of that firm. It was formed about March 15, 1886, and was dissolved by mutual agreement in 1888. Jones, Kennett & Hopkins became the successors of such firm upon its dissolution, took over all its assets and book accounts, and continued the business under the firm name of Jones, Kennett & Hopkins. Subsequently Jones became financially embarrassed, the firm was dissolved, and a new firm formed under the name of Kennett, Hopkins & Co., composed of the plaintiff and Hopkins and George Kirkland. This firm, as before, took over all of the assets, book accounts, and property of the old firm, assumed its liabilities, and thereafter continued to carry on the business until its dissolution, on April 30, 1896. Prior to its dissolution, Kirkland had retired from the firm, and the defendant Harry L. Terry had become a member. When the last firm was organized no written articles of co-partnership were entered into, but it was understood that the terms of the original co-partnership, which had been reduced to writing, should constitute the agreement under which the business should be carried on. During all this period a firm of which Kennett and Hopkins were members car-

ried on business in the city of Chicago, and during all the time had intimate business relations with the New York firm. When the firm of Jones, Kennett & Hopkins was dissolved, on the 11th day of August, 1890, the agreement of dissolution recited that "the co-partnership heretofore existing in Chicago and New York between the undersigned, under the firm name of Jones, Kennett & Hopkins," is dissolved by mutual consent. This agreement was signed by Jones and the other members of the firm of Kennett, Hopkins & Co., and in the notice thereafter published it was stated: "The undersigned have this day formed a co-partnership in Chicago and New York for the transaction of a general banking, brokerage, and commission business under the firm name of Kennett, Hopkins & Co." This notice was signed by the members of the firm. Upon the dissolution of this firm, a new firm, of which Hopkins became a member, was formed in the city of New York, which took over the business of Kennett, Hopkins & Co., and Hopkins was made the liquidating partner of the old firm in the city of New York. In like manner, a new firm was formed in the city of Chicago, which took over the assets and assumed the liabilities of Kennett, Hopkins & Co.; Kennett becoming a member of the new firm and the liquidating partner of the Chicago business. Kennett had no interest in the new firm in the city of New York, and Hopkins had no interest in the new firm formed in the city of Chicago. In August, 1896, this action was begun for an accounting of the affairs and business of the New York firm. The complaint set up the facts in connection with the business, but averred that the firms in New York and Chicago were separate and distinct firms, carrying on business independently of each other, but having intimate business relations. It demanded judgment for an accounting by the defendants of the affairs of the New York firm, and the appointment of a receiver to take charge of its property and assets. The defendants answered separately, Terry alleging that he was not a member of the firm and had no interest therein. His relation to this action has ceased to have any materiality, and he is not affected by the judgment which has been entered. The defendant Hopkins set up his claimed rights and interests in the New York firm, what he was entitled to receive therefrom, and also from the Chicago firm, and he averred, in terms, that there existed but one firm of Kennett, Hopkins & Co., doing business in New York and Chicago, and not two separate and independent firms. He asked that the complaint be dismissed, and for such other relief as might be proper.

After issue was joined, and in September, 1896, upon motion, a temporary receiver was appointed of the assets of the New York firm. This receiver qualified, and made demand upon the defendant Hopkins for the assets and securities of the firm. Subsequently, and in 1897, a trial was had at special term, resulting in an interlocutory judgment granting the prayer of the complaint, by directing that an accounting be had; that a referee be appointed to take such accounting "between the parties as to the right, share, or interest that either the plaintiff, Kennett, or the defendant Hopkins has in the. rights, interests, or property of the firm of Kennett, Hopkins & Co.

in the city of New York, and as to any liens that either has upon such assets." The judgment further provided that the referee take proof as to the amount drawn by either party from the assets during the existence of the partnership; the amount, character, and kind of assets remaining on hand, and those that should have remained at the time of the dissolution of the partnership; the disposition made of such assets; together with a statement of all the liabilities existing either as to third persons or to the members of the partnership; and also to state the amount which either Kennett or Hopkins should have or receive from the other, and whether the same be secured or unsecured from the remaining assets in the city of New York. The interlocutory judgment also provided that, "in determining the amount which either Kennett or Hopkins should receive from the assets in New York, or from the other, the referee is empowered to take and state and adjust the accounts of Kennett and Hopkins in the Chicago business, and the assets, so that such account may be properly considered and applied in reaching the ultimate amount which Kennett or Hopkins should receive from either or from the assets of the New York business."

It is noticeable that this judgment does not assume to determine whether there be one firm doing business in New York and Chicago or two separate firms; and it is quite evident from its terms that inasmuch as it appeared, at the time when the judgment was rendered, that all persons, other than Kennett and Hopkins,—save, perhaps, the creditors of the firm,—had ceased to have any interest in the litigation, and as Kennett and Hopkins were, in fact, co-partners in both firms, it was immaterial to a solution of the rights and liabilities of these persons, as between themselves, to determine such question. In the opinion of the learned trial court which accompanied the judgment, he expressed such to be his view; and it is manifest that, so far as Kennett and Hopkins are concerned, their rights, interests, and liabilities could all be determined without regard to whether there was one or two firms. They were both interested as partners in each firm, and their respective rights and interests therein were clearly specified, and could be definitely ascertained. Each was a liquidator for the other in respect of the business, and in such capacity each was trustee for the other, and bound to act in entire good faith and fidelity with respect to the rights and interests of the other. If it be assumed that there were two firms, nevertheless the character of the dealings between them had been of such a character, and they were so intimately and closely related, that it was a practical impossibility to determine the rights and liabilities of the plaintiff and defendant in one firm, and not determine their rights and interests in the other. There could be no adjustment of the respective rights of Kennett and Hopkins without taking into consideration and adjusting the whole state and condition of the assets in both firms, and the respective rights of each partner therein. This condition is clearly contemplated by the form of the interlocutory judgment; for therein it is provided that the referee shall adjust the accounts of Kennett and Hopkins in the Chicago business, to the end that it might appear what these parties should receive from

the assets of the New York business or from each other. It is quite true that the judgment did not provide, in terms, for a liquidation of the Chicago business, and it is plainly evident that the court would have been without power to liquidate such business. But it clearly appears from the testimony that the only persons in interest are Kennett and Hopkins, except a small number of creditors, for whose claims provision is made; and such being the fact, and it being necessary to take and state the accounts of both businesses in order to adjust the rights and liabilities of the parties in the New York assets, the court did have the power to enter judgment, and direct the referee to take and state the account of the business in each place. It is also to be borne in mind that the interlocutory judgment was drawn and entered by the plaintiff. No appeal has been taken from it, nor is any complaint made of its terms. As the plaintiff entered it, it must be assumed that he desired and intended that an account of the Chicago business should be taken, and that Kennett should be charged with such liability as the state of the accounts imposed upon him in his capacity as trustee and liquidator of such business. So far, therefore, as the interlocutory judgment authorized an accounting by Kennett, he must be held bound by its terms, and not only bound, but as having affirmatively provided therefor therein. While such decree did not assume to direct the liquidation of the Chicago business, yet it did assume and had the power to direct the discovery of existing conditions with respect to both businesses, to the end that the rights and liabilities of the parties in the property within the court's jurisdiction might be adjusted, determined, and apportioned, and the liabilities of the partners each to the other fixed and adjusted. In the execution of the interlocutory judgment, the referee held and decided that by virtue of its provisions he was required to take and state the accounts of the New York and Chicago business in the same form and manner as would have been necessary had he been directed and empowered to liquidate the business of each. In his voluminous report he has found in detail the property, assets, and liabilities of each business, their value and amount, and has established the respective rights of the parties in and to the property and assets, the value thereof, the liens thereon, the obligation of each partner to the other, and the respective amounts each is entitled to have and receive. This he had the clear legal right to do, for the reasons which we have already assigned.

In the discharge of his duties, however, the learned referee has fallen into error. It is well settled that in a reference of this character the referee is without power to hear, try, or determine issues which are material to the cause of action, and which should be determined in the interlocutory judgment. By the pleadings in this case, the issue is clearly presented as to whether there was one firm or two. This issue, if essential and material to the determination of the rights of the parties, was required to be disposed of at the special term, and was beyond the power of the referee to determine, as it was not and could not be involved in any matter submitted to him for determination. New York Bank-Note Co. v. Hamilton Bank-Note Engraving & Printing Co. (Sup.) 67 N. Y. Supp. 827. The ref-

eree, however, proceeded to determine this issue, and it is quite evident that he conceived it to be his duty, under the interlocutory judgment, as preliminary to his right to take and state the account of the Chicago business, to determine such issue, and that, unless it was determined that there existed but one firm, he would be without power to take and state such account, or give any direction with respect to the assets and property of the Chicago firm, or determine the interest of Hopkins therein, or adjust any matter outside the New York business. It is clearly evident that in this regard he misconstrued the interlocutory judgment and its effect, and also misconceived his rights, duties, and powers in the premises; for, as we have already observed, while he did not have the power to liquidate the Chicago business, he did have authority to take and state the accounts of such business, and, in adjusting the rights and liabilities as between the parties in interest in this action, had authority not only to take the account, but to make direction with respect to the property of the Chicago business outside of the jurisdiction of the court.

Concluding, therefore, that the referee fell into error in this respect, does it necessarily follow that the judgment based upon his report is so erroneous as to call for its reversal? We think not. Nothing more has been accomplished by the report and judgment than was authorized by the interlocutory judgment. The fact that the referee conceived it to be within his power to determine the issue as to the existence of the two firms, and thought such determination necessary in order to adjust the rights and liabilities of the parties, did not deprive him of the power to adjust the rights and liabilities of the parties in respect to the property and assets of each business, which could be done without determining such issue, or making it the basis for the exercise of his powers. It was as immaterial to determine this question upon the interlocutory reference as it was to determine it in the interlocutory judgment. It has not, in the slightest degree, prejudiced the plaintiff. The result reached is precisely the result which would have been reached by the referee had he not exceeded in the slightest degree the authority conferred by the interlocutory judgment. That the referee regarded that he was required to determine the question of the existence of the two firms in order to liquidate the Chicago business does not change the question that he was authorized to adjust the accounts in order that the accounting of the New York business might be had, and the respective rights and liabilities of Kennett and Hopkins be determined. The findings of the referee with respect thereto, and the adjustment of the accounts which he has made in his report, all follow from the testimony, which was competent for the purpose, whether he exercised independent power, or followed the directions of the interlocutory judgment. For all practical purposes, the result is the same, and the plaintiff consequently has not been prejudiced by the error which has been committed, nor is the result in the slightest degree changed by it. The whole of the report and the judgment bearing upon this question may be stricken out, and sufficient remain to adjust the rights and liabilities of these parties.

The referee has found and determined that Kennett should account for certain specified assets of the Chicago business. It appears by the testimony that Kennett claimed the right, as the liquidator of the Chicago firm, to dispose of those assets practically as he saw fit, and that he could only be charged with an amount realized upon a sale of the same. While this action was pending, the plaintiff announced his intention to sell and dispose of all of the assets of the Chicago business at public auction. The defendant Hopkins immediately served a notice upon the plaintiff protesting against such sale, or any disposition of such assets, and in addition thereto sought to enjoin the plaintiff from any disposition of them. In this attempt the defendant failed. Kennett v. Hopkins, 40 App. Div. 367, 57 N. Y. Supp. 961.

The plaintiff, in disregard of the notice, claimed to have sold such assets, amounting to upwards of $275,000, for $11,904.29. The notice of such sale states the maximum value which some of the property is worth, and as to some it states, "supposed to have little or no value." This notice bears upon its face some evidence of bad faith. It is the first time that our attention has been called to an auction sale of property where the notice of sale upon its face depreciates the value of the property. Auction sales are held for the purpose of obtaining for the property sold the highest price which public competition will produce, and, while the merits, value, and desirability of the property is frequently extolled, we have never known the notice of such sale to depreciate the value of the property, intended to be sold. It is clearly evident that a person acting in a fiduciary capacity, as the plaintiff acted in this case, is not justified in resorting to such methods, and this notice carries upon its face strong, if not conclusive, evidence of bad faith. Upon the trial the plaintiff was given ample opportunity to show the value of these assets. His claim was that they, for the most part, were made up of suspended accounts, which were of no value; but it appeared that, as to some, the plaintiff held collateral security, equal, in whole or in part, to the amount of the indebtedness, and that some of the real estate sold was situated outside of Illinois, in other states. It is manifest that as to the real estate the proper place of sale was the locus of the property, and, as to the debts secured by collateral, resort should have been had to it. Presumptively, the book accounts were of their face value; and in the absence of all proof, where the plaintiff had opportunity to show value, and was chargeable with a legal obligation to fairly account therefor, he is properly charged with their face value. Potter v. Bank, 28 N. Y. 641; Griggs v. Daly, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120; Hooly v. Gieve, 9 Daly, 104. And we have no doubt but that such rule ought to apply to the real estate, and it be held to be of the value of the indebtedness for which it is security.

The plaintiff, beyond the proof which we have mentioned, failed to give any evidence of the actual value of the accounts and real estate, and the referee in his report has held and determined that the plaintiff was properly chargeable with the book value which the accounts showed. This ruling we think was proper, as the plaintiff was given

abundant opportunity to exonerate himself from any liability above the fair value of the accounts. In addition to this, the report of the referee authorized the plaintiff to exonerate himself from liability by transferring such accounts to the receiver, or, in the alternative, to be charged with their face value. This, we think, was all the relief in this respect to which the plaintiff was entitled, and it is no answer to say that he could not comply with this direction because he had sold the accounts. He was notified not to make the sale, and he was at liberty to prove their real value. His duty to his co-partner required him to act with the utmost good faith, and if he deliberately placed it beyond his power to assign the accounts, seemingly conducted in bad faith, and has refused to disclose their real value, no one is to blame therefor except himself. The judgment which has been entered in this respect follows the report of the referee, and, unless compliance be had with it, the plaintiff will be charged with the whole amount. He may at any time excuse himself, however, before final liquidation, by making such transfer.

It is said, however, that the referee was without power to make this finding, or the court to direct the judgment in accordance with it. We think this contention may not prevail. It is to be borne in mind that this accounting adjusts the rights and liabilities of the two persons in interest herein, and their rights and liabilities are adjusted as partners in specified property, whatever may have been the relations between the firms, whether one or two. In the whole of this property the parties presently in interest are partners, untrammeled by the rights of any other persons. The plaintiff, although a nonresident, comes into this court, and invokes its equitable aid in the assertion of his rights. Thus the court has acquired jurisdiction of his person, and he is bound under familiar rules, if he would have equity done to him, to do equity to those to whom he owes it. As to property outside its jurisdiction, and which is in part the subject of the action, jurisdiction of which was necessary for the complete determination of the controversy, the court having acquired jurisdiction of the person of the plaintiff, and he having invoked the exercise of its equity powers, it had ample authority to compel him to bring such property within its jurisdiction, and to direct that he execute a conveyance or assignment thereof for the purpose of vesting title thereto in such person or officer as the court should select. Mitchell v. Bunch, 2 Paige, Ch. 606; Pom. Eq. Jur. §§ 134, 135, 428, 1318; Gardner v. Ogden, 22 N. Y. 327. The court thus having power to compel the plaintiff to bring the property within its jurisdiction, and it appearing that such property is necessary for the ultimate disposition of the rights of the parties, if the party fails of compliance it may charge him personally with its value, and make the adjustment of the property within its jurisdiction to correspond with the rights of the parties by charging against the plaintiff's rights therein the value of the property which he refuses to assign or convey. The judgment, therefore, is clearly within the power of the court to grant. Indeed, it furnishes the plaintiff an avenue by which he may escape the sum total of that directed to be assigned, and if he fail of compliance he has no one to blame but himself.

We find nothing, therefore, either in the report or the judgment, which may not be sustained, after eliminating therefrom the issue to which we have hereinbefore adverted. It is the claim of the plaintiff, however, that he has been grievously wronged in the credit which has been made to Hopkins of the amount of about $284,000, bad and doubtful debts of the New York business, which have been charged off in his account to profit and loss. It appears that of these bad and doubtful debts some had been transferred and carried upon the books from the time of their inception by the original firm, and, to the extent that they were transferred and carried over, it must be assumed, we think, that all of the partners, in the two reorganizations which followed, must have known and were chargeable with the knowledge that they were bad. When the reference opened, the plaintiff demanded that the defendants exhibit their accounts, and in this demand he seems to have been supported by the referee. The defendant Hopkins thereupon produced his accounts, and days were spent in the examination of witnesses, and the defendant, in connection therewith. There is some testimony which tends strongly to show that Hopkins did not reveal to Kennett the exact state or extent of the bad and doubtful debts every three months, as required by the articles of co-partnership. It does appear, however, that Hopkins rendered statements to Kennett, and that Kennett took profits from the business based upon the assets of the firm which were represented by the bad and doubtful debts, that his capital account was benefited thereby, and that he received larger profits than if they had been charged off before. It was abundantly established that the accounts themselves were bad, and that Hopkins should not be charged therewith unless, by concealment of their condition, he had misled Kennett to his prejudice. Upon this subject a great volume of testimony was given. We have carefully examined the same, and are unable to find any such preponderance of testimony against the conclusions of the referee as would justify this court in interfering with it. On the contrary, we are impressed with the fact that, in the adjustment of the accounts represented by the vast volume of business, the referee has arrived at as correct a result as could reasonably be expected, considering the complex character of the case and the accounts. We do not feel called upon to go through, in detail, each one of these accounts; for, after a careful consideration of the appellant's brief, we are not satisfied that substantial error has been committed, and any attempt upon our part to readjust these voluminous and complicated accounts would probably be attended, to say the least, with as much of error as the referee has committed, if any.

After a careful examination, we cannot say that the referee has committed any error, and for this reason we conclude that the judgment should be modified by striking from the report and judgment that part which determines that there was but one firm of Kennett, Hopkins & Co., and, as so modified, the judgment should be affirmed, with costs to the respondent. So far as the appeal from the order denying a motion for a rehearing is concerned, it appears that the only questions sought to be raised thereby are such as have been pre-

sented by the appeal from the order of confirmation and judgment, and, as we find no error to exist therein, it follows that the order should be affirmed, with $10 costs and disbursements. All concur.

---

(58 App. Div. 535.)

PEOPLE ex rel. NEW YORK & Q. GAS & ELECTRIC CO. v. FEITNER et al., Tax Com'rs.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. TAXATION—ERROR—BURDEN OF PROOF.
    It is incumbent on a taxpayer to establish conclusively that an assessment complained of is erroneous.

2. SAME—CORPORATE STOCK.
    A corporation must prove the value of its franchises before it can claim deductions therefor on an application to correct an assessment of its capital stock.

3. SAME.
    In the absence of other evidence, the cost of the real estate of a corporation, as shown by its books, furnishes a proper basis for valuation thereof in ascertaining the value of its assets for the purpose of fixing the value of its capital stock subject to taxation, and the assessors are not bound by a previous assessed valuation thereof.

Appeal from special term, Queens county.