Louis Cohen, Respondent, v. Emerson E. Rossmoore, Appellant, Impleaded with David Knopfler and Another, Defendants.

First Department, March 1, 1929.

*Ephraim Berliner* of counsel [*Joseph J. Zeiger* and *Leo Guzik* with him on the brief; *Zeiger & Berliner*, attorneys], for the appellant.

*Edward L. Steckler* of counsel [*Steckler & Steckler*, attorneys], for the respondent.

MERRELL, J. The action was brought by the plaintiff, respondent, as payee of a promissory note made by the defendant David Knopfler to secure the payment of the sum of $500 and interest from December 11, 1925, the date of the note. The defendant, appellant, and the defendant Morris Schupper were indorsers of the note in suit. The plaintiff joined as parties defendant the maker of the note and the two accommodation indorsers. The defendant Knopfler appeared in person in the action and set up the defense of usury in his answer. The defendant Schupper made default in appearing or answering. The appellant Rossmoore answered in the action alleging that he was an accommodation indorser and indorsed the note without any consideration whatever and set up six affirmative defenses. The only defense involved upon this appeal is the sixth, wherein the defendant, appellant, alleges that the plaintiff, without the knowledge or consent of said defendant, appellant, released and discharged a chattel mortgage executed by the maker of the note as collateral security for the payment of a prior promissory note in the same amount and of which the note in suit was a renewal, and that the value of such security was in excess of the amount of the note, and that by discharging such chattel mortgage the plaintiff had discharged the appellant from all liability on the note in suit.

The pertinent facts are as follows: On May 11, 1925, Knopfler, the maker of the note in suit, made and delivered to plaintiff his promissory note for $500, payable seven months from the date

thereof, to wit, on December 11, 1925, with interest. This original note was indorsed by one W. B. Newman and by the defendant Schupper. At the time of the making of said note of May 11, 1925, the defendant Knopfler, as collateral security for the payment of said note, executed and delivered to plaintiff a chattel mortgage on certain machinery. On December 11, 1925, when the first note became due, Knopfler informed plaintiff that he could not pay the same and asked renewal of the note for one year. Pending negotiations for renewal, the note went to protest upon maturity. Plaintiff testified at the trial that Knopfler, the maker of the note, had, about two weeks before its maturity, come to him and told him that he would not be able to pay his note on December 11, 1925, and requested renewal of the loan for another year, and that plaintiff release the chattel mortgage given as collateral security for said note; that plaintiff told him that he could not do any favors; that he wanted his $500, and that Knopfler told him that he could not give it to him, but that the money was secure; that some negotiation then ensued between plaintiff, payee of the note, and the maker, Knopfler, with reference to releasing the chattel mortgage security, and that Knopfler promised to furnish a new indorser, and suggested the name of the defendant, appellant. Of these negotiations between the maker and payee of the note the defendant, appellant, was in ignorance. When Knopfler suggested the name of the appellant as an additional indorser of the note to be given in renewal, plaintiff took steps to investigate the appellant and found him satisfactory. The renewal note was made by Knopfler and indorsed by appellant and the defendant Schupper and delivered to plaintiff, the payee therein named. Shortly thereafter the payee called up the appellant and verified his indorsement of the note. This was done, according to the testimony of the defendant, appellant, about the middle of December, 1925. The defendant, appellant, testified that at this time the plaintiff told appellant that he would like notes made out in installments instead of for the term of one year, to which proposition the appellant refused to accede, informing plaintiff that the changed tenure of the note would defeat his purpose in lending the indorsement, which was to assist Knopfler, the maker of the note. Appellant testified that he told plaintiff that he had to be satisfied with the note as it was, in view of the fact that the collateral behind it was ample, and that plaintiff stated that there was collateral there. Appellant testified that he pointed out to plaintiff that the collateral consisted of machinery, to which the plaintiff agreed, but stated that his lawyers insisted that there should be installment notes; that that was the way it was generally done.

Appellant testified that he refused flatly to indorse any installment notes, and told plaintiff that if the note which he had indorsed for the accommodation of Knopfler was unsatisfactory and thereby the first note was not renewed, that he withdrew his consent and indorsement, and that he would refuse to permit the use of the note. Appellant further testified that when the maker of the note called upon him and told him his tale, the appellant was very reluctant to indorse any note, and that he told the defendant Knopfler plainly that to indorse the note was equivalent to loaning money; that Knopfler insisted that it was not equivalent, and that it was a mere accommodation, and that the note would certainly be paid, and " that the chattel mortgage behind the note was plenty; " that " the machinery was worthwhile for the amount of the note." Appellant testified that on the strength of that, in a desire to help the defendant Knopfler, he indorsed the note in suit. Appellant testified that Knopfler informed him that Cohen demanded money on account of the loan; that the note was coming due, and unless it was paid or renewed under the terms stated, that Cohen would foreclose. Plaintiff eventually accepted the note in suit indorsed by defendant, appellant, and returned the original note to the maker. Across the face of the original note in three places there was written the word, " Paid." The chattel mortgage which had been given at the time of the making of the first note was retained by plaintiff, and on May 17, 1926, five months after the execution of the note in suit, the plaintiff personally renewed the chattel mortgage which he had received as security by executing and filing a proper certificate in the office of the county clerk of New York county. The renewal certificate signed by plaintiff, as mortgagee, states that there is due on the mortgage the sum of $500 and interest, and that the copy of the chattel mortgage and statement then filed was to continue the notice required by the statute made and provided for the renewal of chattel mortgages. Thereafter and on May 27, 1926, without the knowledge or consent of the appellant, plaintiff executed a satisfaction of the aforesaid chattel mortgage, which was filed on May 30, 1926, releasing and discharging the mortgage and destroying any right of subrogation on the part of the appellant thereto. It was admitted by the plaintiff at the trial that this release and discharge of the chattel mortgage was given at the request of Knopfler, and that the appellant had nothing to do with it. At the trial the appellant offered proof of the value and quality of the chattels covered by the mortgage. This testimony was excluded by the trial court over the appellant's exception. Plaintiff, on his part, offered no evidence of the value of the security, notwith-

standing the fact that the answer of the appellant alleged that the security was of a value exceeding the amount of the note. At the trial, counsel for defendant, appellant, requested the court to charge the jury that a payee of a note is not deemed to be a holder in due course; also, that the release by the payee of the collateral security held by him for the note in suit discharged the indorser, unless the indorser consented to it; and, further, that the burden was upon the holder to show injury or lack of injury resulting from the release of the collateral. These several requests were refused by the justice presiding at the trial, as to each of which refusals counsel for defendant, appellant, duly excepted. I think the appellant was entitled to the instructions covered by these requests, and that the Municipal Court erred in refusing to charge as requested. I also think the trial court erroneously refused to receive the evidence offered by appellant as to the value and quality of the machines covered by the chattel mortgage. These errors were important and would require the granting of a new trial of the issues. However, for reasons hereinafter stated, I think, under the evidence and under well-settled principles of law, the plaintiff, in discharging the chattel mortgage without the knowledge or consent of appellant, thereby depriving the appellant of the security to which he would be entitled to reimburse himself for moneys which he was compelled to pay by virtue of the indorsement, clearly discharged the appellant from liability upon the note in suit, and that the court should have granted the appellant's motion for dismissal of the complaint as to him. This appeal, therefore, narrows itself down to the question whether the appellant was discharged from liability by the plaintiff's wrongful release of the mortgage depriving the appellant of resort to the security for reimbursement. There can be no question as to the soundness of the rule that a creditor releasing security releases the indorser or surety to a sum equal to the value of the security. There was no claim at the trial by plaintiff that the security was of less value than the amount due upon the note. Apparently plaintiff relies upon the fact that the original note was marked "Paid," and asserts that the chattel mortgage in question was given to secure the first note, and did not apply to the note in suit. Plaintiff, respondent, in order to sustain the judgment appealed from, must show that the original note was paid, and that the note in suit was not a renewal thereof. I think the law is well settled that plaintiff, not having assumed the burden of showing that the value of the security was less than the amount of the note, is met by the legal presumption that such security equaled the amount of the note, and that the discharge of the security discharged the appellant in full.

As between a payee of a promissory note and an accommodation indorser, the relation is that of principal and surety, and, therefore, the surety is entitled to strict construction, and all the principles of suretyship are applicable to the relation of the parties before the court upon this appeal. (*National Park Bank* v. *Koehler*, 204 N. Y. 174.) No principle of law is more firmly established than that a payee or creditor releasing security for his debt discharges the indorser or surety to an amount equal to the value of the property released. (*Vose* v. *Florida R. R. Co.*, 50 N. Y. 369; *Antisdel* v. *Williamson*, 165 id. 372; *New Netherlands Bank* v. *Dernburg*, 206 App. Div. 212.) In 1 Brandt on Suretyship (3d ed. § 480) the textwriter states the rule as follows: " Upon obtaining such a lien [collateral of a debt] the creditor becomes a trustee for all parties concerned, and is bound to apply the property to the purposes of the trust. * * * The surety is entitled, upon paying the debt, to subrogation to all the securities which the creditor may have at any time acquired for the payment thereof, and it results as a corollary from this proposition, that if this right is rendered unavailing by the act of the creditor, the surety is discharged to the extent that he is injured. Where a creditor has released a security to the benefit of which the surety is entitled, it has been held that the burden of proving the value of the thing lost is on the creditor."

With the above principles in mind, the decisions of the courts are quite uniform in holding that the chattel mortgage which the plaintiff received was in nowise impaired by the giving of the note in suit, which was but a renewal of the first note to which the mortgage was given as collateral security, and that when plaintiff discharged the mortgage he thereby destroyed all right of the appellant of subrogation to the security of said mortgage, and that thereby the appellant was released from obligation upon the note itself. The chattel mortgage in question was given upon the making of the first note. It was renewed several months after the giving of the note in suit. Subsequently, without the consent of the appellant, who was an indorser upon the note, the mortgage was released by plaintiff. There can be no question that the mortgage itself was applicable to the note in suit, and that the appellant was entitled to subrogation of its security in case he was called upon to pay the note itself. When the plaintiff discharged the mortgage he deprived appellant of the opportunity for reimbursement by recourse to the mortgaged chattels. The decisions of our courts and as well those of sister States and of the United States Supreme Court seem uniform in holding that where a new note is given at the maturity of a prior one, and where the payee has received security for the

payment of the first note, such security remains valid for the payment of the second note. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521; *Hill* v. *Beebe*, 13 id. 556; *Jones* v. *Guaranty & Indemnity Co.*, 101 U. S. 622, 630; *Holland Trust Co.* v. *Waddell*, 75 Hun, 104; affd., on opinion below, 151 N. Y. 666; *Bank of Monroe* v. *Gifford*, 79 Iowa, 300.) The case of *Bank of Monroe* v. *Gifford* (*supra*) seems to be directly in point. In that case one Anderson owed plaintiff, which held certain property as security for the payment of his debt. Thereafter Anderson gave plaintiff a note which was indorsed by defendant. Before the note became due plaintiff, without the defendant's consent, released to Anderson the security which it had received for the payment of the first note. The Supreme Court of Iowa held that the defendant was thereby discharged from liability on the note. The Supreme Court, per BECK, J. (at p. 309), stated: "When he becomes surety, his right to require all prior securities to remain unchanged becomes fixed. He, it is presumed, entered into the contract, relying upon the protection secured by the law. Can the creditor and the principal, or either of them, assent to a change of securities so as to prejudice the surety? Surely, the law will not, leaving a surety to the mercy of the creditor or principal, permit either or both of them to surrender his rights upon their united or separate agreement."

In *Jones* v. *Guaranty & Indemnity Co.* (101 U. S. 622, 630) the United States Supreme Court said: "If a note secured by a mortgage be renewed or otherwise changed, the lien of the mortgage continues until the debt is paid. Changes in the form of the instrument are immaterial. Equity regards only the substance of things, and deals with human affairs upon that principle."

In *Jagger Iron Co.* v. *Walker* (*supra*) the Court of Appeals said (at p. 524): "Where a chattel mortgage is given to secure a debt, the taking of a new note and a new mortgage, does not extinguish the original debt, nor the first mortgage."

The respondent, however, takes the position that the note in suit was not a renewal of the prior note, and that the prior note was paid by the giving of the note in suit. This contention is contrary to all legal presumptions and to the well-considered decisions of our courts. A man may not pay his promissory note or discharge the debt secured thereby by executing a new note for the same amount. The presumption is that the note in suit was a renewal of the original note (*Garfield National Bank* v. *Wallach*, 223 App. Div. 303; *Dibble* v. *Richardson*, 171 N. Y. 131; *Jagger Iron Co.* v. *Walker*, 76 id. 521; *Bates* v. *Rosekrans*, 37 id. 409), and the fact that the note in suit bore the name of a new indorser, the appellant herein, does not alter the situation. (*Bates* v. *Rosekrans*, 37

N. Y. 409; *National Bank of Newburgh* v. *Bigler*, 83 id. 51; *Mutual Benefit Life Ins. Co.* v. *First National Bank*, 160 Ky. 538.) In *Garfield National Bank* v. *Wallach* (223 App. Div. 303) this court very recently held that the mere cancellation and surrender of the old note did not effect payment thereof where a renewal note was given. Mr. Justice McAvoy, writing for this court, said in that case (at p. 306): " Cancellation and surrender alone of an old note do not effect payment thereof where a renewal note is given, under many New York cases and a considerable number of the authorities in foreign jurisdictions."

Not only is the note in suit presumptively a renewal of the original note, but such was the clear understanding of the plaintiff and the maker of the new note at the time it was made. In this respect the following testimony of the plaintiff is significant: " Q. Did you receive from Mr. Knopfler or any of the endorsers any part of this five hundred dollars that you loaned to Mr. Knopfler on May 11th, 1925; was any part of it paid back to you? A. No, sir, it was not. * * * Q. And the note in suit, the one you are suing on now, is a renewal of that note, isn't it? A. Yes, sir. * * * Q. Now, before the note, the seven months' note expired, you stated to the Court and jury that Mr. Knopfler came to your place and said that he could not pay it? A. Yes, sir. Q. Thereupon the note was renewed, was it not? A. Yes, sir. Q. He gave you another note? A. Yes, sir. Q. For five hundred dollars? A. Yes, sir. Q. For a period of one year? A. Yes, sir. Q. And that is the note upon which you are suing in this action? A. Yes, sir. Q. The note, Plaintiff's Exhibit 1? A. Yes, sir." The testimony of the maker of the note also clearly shows that the note in suit was intended to be a renewal of the original note. " Q. You are the maker of the first note, of which this note is the renewal? A. Yes, sir. * * * Q. You told him you wanted a renewal? A. Yes, sir. * * * Q. What did he say? A. I saw Mr. Cohen after and he told me Mr. Rossmoore would not sign such an arrangement and Mr. Cohen accepted the note. Q. He accepted a renewal note? A. Yes, sir."

Moreover, the record of the trial discloses that plaintiff's counsel throughout the trial regarded and referred to the note in suit as a renewal of the note of May 11, 1925.

The burden was clearly upon the plaintiff, who had discharged and released the security, to show that the value of the security was less than the indebtedness, and by his failure to offer such proof the value was presumed to be at least the amount of the indebtedness, and the appellant was discharged from liability. (*Kennett* v. *Hopkins*, 58 App. Div. 407, 416; *Thomas* v. *Zahka*, 228 N. Y. 187.)

In *Underhill* v. *Palmer* (10 Daly, 478) the court said (at p. 480): "When a security is relinquished, it becomes the duty of the creditor to show affirmatively that such relinquishment has not injured the surety." For the reasons hereinbefore stated I think the discharge of the chattel mortgage clearly released appellant from further liability upon the note.

The determination appealed from should be reversed, with costs and disbursements in this court and in the Appellate Term, and the judgment of the Municipal Court reversed as to the defendant Emerson E. Rossmoore and the complaint dismissed as to said defendant, with costs.

DOWLING, P. J., MARTIN, O'MALLEY and PROSKAUER, JJ., concur.

Determination reversed, with costs and disbursements in this court and in the Appellate Term, and judgment of the Municipal Court reversed as to defendant Emerson E. Rossmoore and complaint dismissed as to said defendant, with costs.