Edwin W. LANCASTER, Plaintiff,

v.

Elodie C. ZUFLE, Defendant.

No. 95 Civ. 3932 (JSR).

United States District Court,
S.D. New York.

July 29, 1996.

Maurice A. Curan, Anderson Banks Curran & Donoghue, Mt. Kisco, NY, for Plaintiff.

Henry L. Klein, New Orleans, LA, for Defendant.

*OPINION AND ORDER*

RAKOFF, District Judge.

Silent Partner Body Armor, Inc., a New York corporation with its principal place of business in Louisiana, is a manufacturer of bulletproof vests and other protective "armor." [1] In 1990, plaintiff Edwin W. Lancaster pledged $330,000 in collateral to the Chemical Bank of New York in order to secure loans for the benefit of Silent Partner. Chemical then made an initial loan for $250,000 to Silent Partner on April 2, 1990, evidenced by a note of that date that was signed by, among others, defendant Elodie C. Zufle, Secretary–Treasurer of Silent Partner and the mother of Silent Partner's President, T. Tyler Zufle. After the principal balance due on that loan had been reduced to $150,000, the original note was surrendered and a new note executed on January 3, 1991 in the amount of the remaining $150,000, secured by the same Lancaster collateral. Ms. Zufle's name and signature, however, did not appear on the new note. Thereafter, further loans (in the amounts of $120,000 and $5,000, respectively) were also obtained for the benefit of Silent Partner, again secured by the Lancaster collateral and again evidenced by notes not bearing Ms. Zufle's name or signature.

Ultimately, Silent Partner defaulted, and Chemical Bank foreclosed on the Lancaster collateral in order to satisfy payment. Mr. Lancaster then commenced this lawsuit against Ms. Zufle, contending that her signature on the original note evidenced her per-

---

1. According to defendant's counsel, police officers commonly refer to their bulletproof vests as their "silent partners"—hence the name of the company.

sonal liability for the loan. After her motion to dismiss for lack of personal jurisdiction was denied by Judge Parker, *see Lancaster v. Zufle,* 165 F.R.D. 38 (S.D.N.Y.1996), Ms. Zufle moved for summary judgment, the resolution of which was held in abeyance while plaintiff conducted discovery of Chemical Bank. Thereafter, following written submissions by both parties, this Court held oral argument on June 19, 1996. Having now carefully reviewed the entire record, and bearing in mind the applicable legal standards governing summary judgment, *see, e.g., Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995), the Court hereby grants summary judgment in favor of the defendant, for two, independent reasons.

■ *First,* certain undisputed facts conclusively establish that Ms. Zufle never assumed any personal liability on the original note. As a basis for his claim that Ms. Zufle is personally liable on the original note, Mr. Lancaster relies primarily on the fact that at the bottom of this standard-form note, there appears, on the lower left, "SILENT PARTNER BODY ARMOR, INC., T. Tyler Zufle, President, by Tammy Schwartz, Attorney in Fact," and on the lower right, "Elodie C. Zufle." (Def.Ex. D to Motion for Summary Judgment). Plaintiff contends that this evidences that both Silent Partner and Ms. Zufle are obligors on the note or at least supplies a sufficient factual predicate for a jury to so infer.

Other undisputed facts of record, however, totally demolish this contention. To begin with, every other document in the Chemical Bank file relating to these loans, save arguably one (discussed below), identifies Silent Partner as the sole borrower and obligor on the original loan (as on the subsequent loans). For example, the nine separate pledge agreements executed by plaintiff Lancaster in April, 1990 in order to secure the original loan *all* identify Silent Partner as the sole borrower. The subsequent loan notes, secured by the same collateral, likewise identify Silent Partner as the sole borrower, and, as mentioned, do not include Ms. Zufle's name or signature. The Chemical loan file also confirms, as the undisputed testimony attests, that the entire proceeds of the original loan (as those of the subsequent loans) all went to Silent Partner. Conversely, it is undisputed that Ms. Zufle did not receive any proceeds of the original (or of any subsequent) loan, nor did she sign any guarantee agreement on any of the loans. Finally, the Closing Statement on the original loan, which purports to summarize both the terms of the loan agreement and the circumstances of its closing, unequivocally states that the sole borrower is Silent Partner. (Def.Ex. E to Motion for Summary Judgment).

Further, defendant has, through sworn affidavits from persons with direct knowledge, adduced uncontradicted evidence as to why Ms. Zufle's signature appears on the original note and why it must be taken as appearing there in a representative capacity on behalf of Silent Partner. In particular, it appears from these affidavits that T. Tyler Zufle, the then President of Silent Partner, was in the Phillippines in early April, 1990, when the original loan was due to close. In Mr. Zufle's absence, Tammy Schwartz, an employee of the law firm representing Silent Partner in connection with the loan, was authorized to sign for Mr. Zufle as "Attorney in Fact." A day or so before the closing, however, Ms. Schwartz informed Silent Partner that in order for the loan to close in Mr. Zufle's absence, Chemical Bank would also need the guaranteed signature of the Secretary–Treasurer of the company, who happened to be Ms. Zufle. Ms. Schwartz then sent the requisite documents to Ms. Zufle by express courier, asking her to simply sign in those places where she (Ms. Schwartz) had placed an "X," and Ms. Zufle did so. (Affidavit of T. Tyler Zufle, ¶¶ 2–4; Affidavit of Diane R. Zufle, ¶¶ 1–3).

This thoroughly convincing explanation of why Ms. Zufle signed the first note, solely in her corporate capacity, is not directly disputed by plaintiff. Indeed, plaintiff, in his carefully worded affidavit submitted in opposition to the instant motion for summary judgment, never specifically states that he had any understanding at the time of the loan that Ms. Zufle was a borrower or obligor in her own

right. Rather, he simply recites the existence of the two items of documentary evidence on which plaintiff relies (the original note discussed above and the "Loan Collateral Agreement" discussed below) and argues (in language seemingly crafted by his counsel) for the inferences allegedly arising therefrom. The failure of Mr. Lancaster, in his sworn affidavit, to expressly aver that he understood at the time of the loan that Ms. Zufle was an obligor, is, in this context, so striking as to give rise to a strong inference that the opposite is true. It is, indeed, tantamount to an admission by plaintiff of a fact itself sufficient to warrant summary judgment for the defendant, *i.e.*, that Ms. Zufle never was personally obligated on the original note.

Further still, there is the sworn testimony of Michael Suarez, the Chemical Bank loan officer in charge of the loan, whose deposition was taken by plaintiff on June 6, 1996. Defendant's counsel did not even appear for this deposition, so plaintiff's counsel had a free hand to elicit his very best case from Mr. Suarez. Nonetheless, Mr. Suarez was clear, unequivocal, and adamant in testifying that the sole borrower on the original loan (as on the subsequent loans) was Silent Partner, and that Ms. Zufle never signed in any but a representative capacity.

For example, when confronted with the original note itself, and asked about the signatures at the bottom, Mr. Suarez testified as follows:

> However, what I do see, at the very bottom, is the borrower's name indicated, Silent Partner Body Armor, Inc. I see the signature of Elodie Zufle, but she would be signing as or on behalf of Silent Partner Body Armor. She couldn't sign this loan individually. It wouldn't work. (Deposition of Michael Suarez at 28; *see also* Suarez Dep. at 44).

Similarly, with reference to a collateral hypothecation statement signed by Ms. Zufle in connection with the original loan, Mr. Suarez, in response to the question "Did she sign it in an individual capacity?," answered as follows:

> No. You want to know why? Because the borrower is Silent Partner Body Armor and that's it. Nowhere on this form is Elodie Zufle a borrower. She signed the document on behalf of. It's very clear Silent Partner Body Armor, Inc.—she couldn't have signed it as an individual. It would have required a separate form. Every form has this, 'Silent Partner Body Armor.' You could sign this, but all it would indicate is that you are signing on behalf of Silent Partner Body Armor, right there. (Suarez Dep. at 27).

Against this overwhelming and undisputed evidence, both documentary and testimonial, that Ms. Zufle signed the original note only on behalf of Silent Partner and not as an independent obligor, plaintiff points only to one other item beside the facially ambiguous note itself, and that is a document entitled "Loan Collateral Agreement" (Pl.Ex. D to Complaint) signed by Ms. Zufle on April 2, 1990 in connection with the original loan. Although executed in the same manner as the other documents that bear Ms. Zufle's signature, this document differs from all those other documents (including the note) in that underneath Ms. Zufle's signature is a small handwritten notation: "(Borrower)". Plaintiff has produced no evidence indicating that it was Ms. Zufle who added this notation or, more importantly, what significance can fairly be ascribed to its addition, since the entire purpose of the document is simply to absolve Chemical Bank from certain responsibilities relating to the collateral.

Thus, for example, Mr. Suarez, at his deposition, was unable to say who had written "(Borrower)" or whether it had been inserted before or after Ms. Zufle signed the document or even before or after the loan closed (Suarez Dep. at 32–33). But he was quite clear that, in any case, it was irrelevant since "[i]t's not the loan note itself" and "[a]ll this document does—. . . . What it really does, it absolves Chemical Bank of any obligations with regard to the collateral. . . . So it's a document whereby Chemical Bank absolves itself from any responsibility for calls or anything else with regard to the collateral. That's all." (Suarez Dep. at 29–30).

In other words, no matter in what capacity Ms. Zufle signed this collateral document, it

would not of itself make her personally obligated on the loan; and to the extent it may be said to bear on the interpretation to be given to her signature on the note (where the word "Borrower" does *not* appear beside her signature), it provides far too speculative and tenuous a basis to raise a genuine dispute on this issue in light of the overwhelming direct evidence that Ms. Zufle never so obligated herself. *See, e.g., Pfizer v. Astra Pharmaceutical Products, Inc.,* 858 F.Supp. 1305, 1316 (S.D.N.Y.1994); *Ortiz v. Rosner,* 817 F.Supp. 348, 350 (S.D.N.Y.1993).

In sum, the Court finds that plaintiff has produced no material evidence that Ms. Zufle was an obligor on the original note or any genuine basis to dispute defendant's overwhelming evidence that she was not. On this ground alone summary judgment must be granted to defendant. ·

■ *Second,* an independently sufficient basis for the Court's decision derives from the fact that the records of Chemical Bank conclusively show, and neither party disputes, that the only note bearing Ms. Zufle's name and signature, *i.e.,* the original note for $250,000, was surrendered at or about the time that a new note for $150,000 was executed. Since Ms. Zufle did not sign the second (or any subsequent) note, defendant argues that the surrender of the original note served to discharge Ms. Zufle from liability as a matter of law.

Both parties agree that New York State law governs the effect of any surrender in this case. Section 3–605 of the New York State Uniform Commercial Code provides in pertinent part that "[t]he holder of an instrument may even without consideration discharge any party ... by surrender of the instrument to the party to be discharged."[2]

The plaintiff here, noting that the statute is couched in terms of "may" discharge, rather than "must" discharge, argues that § 3–605 should not be read as overruling prior

New York case law that the mere surrender of a note in connection with a "roll-over" does not operate as a discharge of the original note unless the parties so intend. *See, e.g., Cohen v. Rossmoore,* 225 A.D. 300, 233 N.Y.S. 196, 204 (1st Dept.1929). In the instant case, there is ample evidence to infer that the second note was merely a "roll-over," *i.e.,* that its purpose was to extend the date on which the unpaid principal of the original loan was due. Under the circumstances, plaintiff argues, it remains a jury question whether the fact that the second note did not include Ms. Zufle's signature was intended as a release of her alleged liability on the original note or was simply a convenience to the primary obligor, Silent Partner, which now would have more time to pay off the debt on the second note.

The courts of New York do not appear to have addressed the question of whether a surrender under § 3–605 operates as a discharge as a matter of law, or whether, as under prior New York State law, the matter remains a fact issue to be determined by a jury. Courts in other states that have adopted the Uniform Commercial Code appear to endorse the view that the surrender of a note does not necessarily operate as a discharge if the parties intend otherwise. *See Hubbard Realty Company, Inc., v. First National Bank of Pikeville,* 704 F.2d 733 (4th Cir.1983); *Winkel v. Erpelding,* 526 N.W.2d 316, 319 (Iowa 1995); *Gibraltar Savings Association v. Watson,* 624 S.W.2d 650, 653 (Tex.Ct.App.1981).

This Court needs not reach this legal issue, however, for when the surrender of the original note and the absence of Ms. Zufle's signature from the "roll-over" note are read in the context of the rest of the Chemical Bank loan file, defendant, at a minimum, makes out a *prima facie* showing of the parties' intent to release Ms. Zufle that plaintiff has failed to rebut. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *Magee*

---

**2.** Although the record is unclear regarding precisely to whom at Silent Partner the surrender was made, plaintiff does not contend that anything turns on this uncertainty, effectively conceding the obvious inference that surrender of the note to any member of this family-owned enterprise of which Ms. Zufle was Secretary-

Treasurer would also serve as a surrender to Ms. Zufle personally, to the extent that anyone believed that she had liability thereon. Of course, for the reasons indicated in the first holding of this opinion, there is no reason to believe that anyone actually thought she had such personal liability.

*v. Earl,* 1994 WL 693878, *2 (S.D.N.Y.1994). In particular, the Chemical Bank loan file unequivocally indicates that the Bank never regarded Ms. Zufle as having any loan liability whatever after the "roll-over" note was signed. Rather, all the documents prepared by the Bank (including its internal memoranda) in connection with the "roll-over" loan uniformly indicate that the Bank regarded Silent Partner as the sole obligor on the loan following the "roll-over" (as, indeed, before). Similarly, Mr. Suarez testified that, while he could have readily obtained Ms. Zufle's signature on the "roll-over" note if he had wanted to confirm any supposed continuing obligation by her, all he sought in fact was the signature of T. Tyler Zufle because it was clear to him and the Bank that the sole obligor, at all times, was Silent Partner. (Suarez Dep. at 40, 44). Thus, even if one could somehow manufacture a claim that Ms. Zufle had liability on the original note, plaintiff has failed to adduce any admissible evidence to dispute the *prima facie* evidence that any such liability was subsequently extinguished by the surrender of that note.

In the end, it is beyond reasonable dispute that at the times when both the first and second notes were executed, no one—not Ms. Zufle, not Chemical Bank, not even Mr. Lancaster—thought the borrower was anyone other than Silent Partner. When Silent Partner defaulted and Mr. Lancaster lost the substantial collateral he had pledged, it was the unfortunate result of the very risk he had undertaken and should have been accepted as such. Instead, an attempt was made through this lawsuit to seek recovery from Ms. Zufle, based on after-the-fact reinterpretations of two documents that in their actual context provide no genuine support for plaintiff's theory. This then becomes a classic case for summary judgment.

For the foregoing reasons, the Clerk of the Court is directed to enter summary judgment in favor of the defendant.

SO ORDERED.