**In re SHOCKLEY FOREST INDUSTRIES, INC., Debtor.**

**The FIRST NATIONAL BANK OF McDONOUGH, Plaintiff,**

**v.**

**SHOCKLEY FOREST INDUSTRIES, INC., Defendant.**

**Bankruptcy No. 79–03369A.**
**Adversary No. 80–0338A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

June 30, 1980.

Margaret H. Murphy, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for First Nat. Bank of McDonough.

Kirk W. Watkins, Parker, Johnson & Cook, P. C., Atlanta, Ga., for Shockley Forest.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

On May 23, 1980 this Court granted to Plaintiff relief from the automatic stay in the above-styled case. Defendant's request for a final hearing on said relief brought the issues involved herein before the Court. The request for a final hearing was granted, and this matter came on regularly to be heard on June 26, 1980. Having heard the arguments of the parties and having reviewed the pleadings on file the Court makes the following entry:

## FINDINGS OF FACT

1. Shockley Forest Industries, Inc., a Chapter 11 debtor, (hereinafter referred to as "Debtor") is presently indebted to the First National Bank of McDonough ("Plaintiff") on a promissory note. The outstanding balance due on said note is $77,634.20.

2. This promissory note is secured by certain real property and the improvements thereon and by the personal guarantee of Mr. Shockley, president of Debtor.

3. Debtor is presently about eight months in arrears on said debt.

4. Plaintiff was previously granted relief from the automatic stay by order of this Court entered May 23, 1980. Said order authorized Plaintiff to advertise the subject real property during the month of June, 1980 for foreclosure in July, 1980 conditioned upon the failure of Debtor to obtain approval by its creditors and confirmation by the Court of its Plan of Reorganization submitted on May 15, 1980. Plaintiff was further authorized to exercise its remedies under Georgia Law with respect to personal property securing another promissory note which is not here relevant.

5. Debtor has not yet obtained approval by its creditors and confirmation by the Court of its Plan of Reorganization.

6. An extension of the stay until September 1, 1980 has been requested by Debtor. It is Debtor's intention to cure the default of $13,892.40 by September 1, 1980. As additional collateral to secure the promissory note, Debtor is willing to give Plaintiff a security interest in unencumbered equipment, office furniture and fixtures. Debtor is willing to agree to a consent order authorizing Plaintiff to advertise in August for September foreclosure and granting relief from the stay should the default remain uncured by the date of foreclosure. Furthermore Debtor is willing to agree to the inclusion in the consent order of a provision requiring Debtor to pay Plaintiff's attorney's fees incurred in these proceedings and to pay for Plaintiff's advertising costs for the month of August.

7. It is conceded by Plaintiff that the value of the real estate securing the promissory note exceeds the debt due by Debtor to Plaintiff.

8. The value of the unencumbered equipment, office furniture and fixtures which have been offered by Debtor as additional security for the promissory note is $26,635.00.

9. The value of the real estate which secures the promissory note is $225,000.00.

10. Debtor has applied for a loan guarantee from the Farmer's Home Administration ("FHA"). Several lenders have agreed to loan money to Debtor if said guarantee is obtained by Debtor.

11. This matter came on regularly to be heard before the Court on June 26, 1980.

## DISCUSSION

Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay provided in Section 362(a) for cause including lack of protection of an interest in property of a party in interest.

Adequate protection is not defined in the Bankruptcy Code; however Section 361 of the code sets forth examples of how adequate protection may be provided. The pertinent parts of this section read as follows:

"When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

■ Determining whether a secured creditor is adequately protected involves a valuation of the indebtedness owed to the creditor and of the property securing the indebtedness. See *In Re: Rogers Development Corporation*, 2 B.R. 679 (E.D. Va. 1980). The legislative history of Section 361 reveals that there is no set standard of valuation applicable to resolve disputes concerning adequate protection. It is said in House Report No. 95–595, 95th Cong., 1st Sess. (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6295:

"The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case . . ."

Factors which enter into the determination of value include the nature of debtor's business, the prospects for rehabilitation and the nature of the collateral. 2 *Collier on Bankruptcy* (15th Edition) ¶361.02.

Debtor is in the business of buying and selling lumber and related forest products. Plaintiff contends that Debtor's eventual rehabilitation is unlikely. A previous loan application made by Debtor to the FHA was denied. Mr. Shockley, President of Debtor, testified that the loan application was turned down because of the limited amount of funds available to the FHA for the purpose of making loans.

■ Debtor has applied to the FHA for a loan guarantee. At this time the application has been neither approved nor denied. The approval or denial of this application for a loan guarantee may have significant impact on the success of Debtor's rehabilitative efforts. However in evaluating the likelihood that Debtor's efforts will be successful this Court must be mindful of the purpose of Chapter 11 of the Bankruptcy Code. Chapter 11 is designed for the purpose of preventing the unnecessary dissolu-

tion of an otherwise viable corporation. *In Re: Aurora Cord and Cable Company*, 1 CBC 2d 486, 2 B.R. 342 (Bkrtcy. N.D. Ill. 1980). A court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor. At this time the Court has no basis on which to conclude that Debtor cannot be rehabilitated.

*In Re: American Kitchen Foods, Inc.*, 9 CBC 537 (D. Me. 1976) held that the most commercially reasonable disposition practicable in the circumstances should be the standard of valuation for collateral. There the Court said:

"Where collateral is used or produced under Chapter XI by a going business which offers reasonable prospects that it can continue, the value of the collateral is equatable with the net recovery realizable from its disposition as near as may be in the ordinary course of the business. *Id.* at 553.

■ Although this case was decided before the Bankruptcy Reform Act of 1978 became effective, the standard of valuation formulated therein may still be applicable in appropriate cases. The real estate collateral and the business equipment, furnishings and fixtures offered to Plaintiff as additional collateral are presently being used by a going business concern. It has already been stated that at this time the Court cannot conclude that Debtor's efforts to reorganize are not likely to succeed; therefore the Court concludes that the fair market value is the appropriate standard of valuation in the instant case.

The real property security is used by Debtor in its business. Debtor has expended approximately $90,000.00 on improvements on the real property. This real estate has access to a railroad siding. Improvements have been made on the adjacent property owned by the railroad including paving and construction of a loading dock. These improvements have increased the value of Debtor's real property. Mr. Shockley testified that the value of the subject real property is $225,000.00. This

valuation was not contradicted; therefore the Court concludes that the value of the real property is $225,000.00.

In addition to the real property, Debtor has offered as additional security unencumbered equipment, office furniture and fixtures appraised at $26,635.00. The office furniture was appraised by Mr. Ellis J. Spratlin who testified at the hearing. Mr. Spratlin owned a printing and office supply business for two and a half years. Most of the office furniture offered to Plaintiff as additional collateral was purchased from Mr. Spratlin by Debtor. Mr. Spratlin testified that the values assigned to the office furniture represent the fair market value based on the list price taking depreciation into consideration.

Mr. Shockley appraised the business equipment offered to Debtor as additional collateral. The values assigned to the business equipment also represent the fair market value of the equipment based on a comparison of prices of similar used equipment.

The Court notes that Plaintiff was not notified of Debtor's offer of additional collateral until the day of the hearing and therefore had no time to gather evidence on its value. However, this Court must make a decision based on the evidence it has. The Court concludes that the value of the business equipment, furnishings and fixtures is $26,635.00.

Having found the value of the collateral securing the debt owed by Debtor to Plaintiff, the Court must determine if Plaintiff's interest therein is adequately protected.

It has been recognized that an equity cushion created by the excess of security over debt may provide adequate protection to a creditor. *In Re: Rogers Development Corporation*, 2 B.R. 679 (E.D. Va. 1980); *In Re: Pitts*, 2 B.R. 476 (C.D. Calif. 1979); 2 *Collier on Bankruptcy* (15th Edition), ¶361.-01[3], pp. 361–9. See also *In Re: Anderson-Walker Industries, Inc.*, 1 CBC 2d 831, 3 B.R. 551 (Bkrtcy.C.D.Calif.1980).

In the instant case the value of the real property collateral alone substantially exceeds the amount of the secured indebtedness. Debtor is willing to provide as additional security collateral valued at $26,-635.00. There is no evidence that any of the real or personal property is rapidly decreasing in value. Furthermore, the real property collateral is necessary for Debtor's effective reorganization. Without this real estate, Debtor's efforts to reorganize will be futile. Debtor is asking for no more than Plaintiff's forbearance from asserting its rights in the collateral for two months. The Court concludes that Plaintiff's interest in the collateral is adequately protected at this time.

## CONCLUSIONS OF LAW

1. Because Debtor is a going business concern with reasonable prospects for rehabilitation, the proper standard of valuation of the collateral involved herein is the fair market value.

2. The value of the collateral securing Debtor's indebtedness to Plaintiff substantially exceeds the amount of the debt due.

3. Plaintiff's interest in the collateral is adequately protected by the equity cushion created by the excess of the value of the security over the amount of the debt due.

It is therefore ORDERED that:

The automatic stay provided in 11 U.S.C. § 362(a) shall remain in effect at least until September 1, 1980;

Debtor shall execute a security agreement and U.C.C. financing statement in accordance with Georgia law granting Plaintiff a security interest in the business furniture, equipment and fixtures offered by Debtor to Plaintiff as additional security;

Plaintiff is authorized to advertise the subject real property during August, 1980 for foreclosure in September, 1980 and Debtor shall pay the costs therefor; and

Debtor shall pay to Plaintiff the sum of $13,892.40 by September 1, 1980.

IT IS FURTHER ORDERED that if Debtor fails to pay the above-stated sum in full by September 1, 1980 the automatic stay shall be lifted and Plaintiff shall be

authorized to pursue its remedies against the collateral security; and it is

ORDERED that the continuation of the automatic stay is further conditioned upon the obtaining of approval by the creditors and confirmation by this Court of Debtor's Plan of Reorganization.