In re HEATRON, INC., Debtor.

Bankruptcy No. 80–02656–2–11.

United States Bankruptcy Court,
W. D. Missouri.

Sept. 22, 1980.

See also, Bkrtcy., 5 B.R. 703.

Charles A. Darby, Kansas City, Mo., for debtor.

Frank W. Koger, Shockley, Reid & Koger, Kansas City, Mo., for Commerce Bank and Capital for Business.

## ORDER AUTHORIZING USE OF CASH COLLATERAL

JOEL PELOFSKY, Bankruptcy Judge.

This is a proceeding under Chapter 11 of the Code. Debtor has filed a Motion, pursuant to the provisions of Section 363, Title 11, U.S.C., to use cash collateral in the continuation of its business. The debt is secured by equipment, fixtures and tools and all accounts receivable and inventory, now owned or hereafter acquired. Debtor alleges that the creditor is adequately protected; the fair value of assets exceeds the debt and will generate replacement accounts. Evidentiary hearings were held on three occasions, at which debtor appeared by counsel and officers and employees and the creditors, Commerce Bank and Capital for Business, appeared by attorney and various officers. Evidence was taken on each occasion. There is no question that debtor must use the cash collateral to continue its business. The issue is that of adequate protection for the creditor.

Section 361, Title 11, U.S.C., provides, in part, that

"When adequate protection is required under section ... 363 ... of this title of

an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity ...

(2) providing to such entity an additional or replacement lien

(3) granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

The concept of adequate protection is based upon two contradictory realities. One is that the use of cash collateral is essential to the success of the reorganization. The other is that the use necessarily diminishes the value of the security bargained for by the creditor and the secured position ought not to be allowed to deteriorate. Section 363(e) of Title 11, U.S.C. requires the Court, upon "request of an entity that has an interest in property used" to condition such use so as to provide adequate protection of such interest. Providing adequate protection is mandatory, 2 Collier on Bankruptcy, Paragraph 363.06 (15th Ed.), but the precise form and sufficiency of such protection must be developed by the trustee (here the debtor in possession) and addressed to the sound discretion of the Court. 2 Collier on Bankruptcy, Paragraph 361.01 (15th Ed.).

The concept of adequate protection rests upon constitutional principles of due process. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy °power Congress may discharge the debtor's personal obligations, because, unlike the states, it is not prohibited from impairing the obligations of contracts." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). The question in *Radford*, however, was whether the Congress could, by statute, take "substantive rights in specific property." 295 U.S. at 590, 55 S.Ct. at 863.

"Legislation by Congress may supersede that of a state ... but Congress cannot repeal a state law; nor can it exert control over individual property rights ex-

cept in the proper exercise of its constitutional powers ...

"Of course, under the bankruptcy power Congress may provide for the fair and equitable distribution of a debtor's property among his creditors; may discharge the debtor from liability for pre–existing debts; may impair or destroy the obligation of private contracts; and may effect changes in the lienholder's remedy or delay its enforcement ... the exercise of these powers does not permit the total or partial destruction of vested property rights ... Congress, in the exercise of the bankruptcy power ... may not take a property right from one creditor and transfer it without compensation to another without violating the Fifth Amendment." *Ginsberg v. Lindel*, 107 F.2d 721, 725–726 (8th Cir. 1939).

While the issue of the Court's power to authorize the use of collateral during reorganization, once the subject of much argument, cf. *In re Waltham Watch Co.*, 185 F.2d 791 (1st Cir. 1950), is well settled by statute (Sections 361, 362 and 363, Title 11, U.S.C.), the authority is hedged about with restrictions to insure that the use does not result in the impairment of the value of the security.

In the case at bar, debtor owes two entities, Commerce Bank and Capital for Business. They are related in some fashion, not significant here. Initially, Capital for Business lent the debtor $200,000.00 to enable it to buy out the principal shareholder. This transaction was secured by an assignment of stock and occurred in November of 1979. Subsequently, the Bank loaned debtor $90,-000.00, a substantial portion of which was paid to the principal shareholder as interest. The Bank took a security position in equipment, inventory and accounts receivable. Thereafter the Bank made two additional loans, totalling $21,000.00 to pay for accounting services provided to the debtor by Ernst & Whinney and to pay taxes due the Internal Revenue Service. Capital for Business also made an additional loan. The aggregate amount of the debt owed to the two entities exceeds $325,000.00.

The debt instruments and the precise amount of the debt are not in evidence. The testimony indicates that the debt is in the form of demand instruments and payments are interest only for the immediate future. The payments were made regularly through July of 1980. In April of 1980, however, the debtor failed to furnish the Bank with its monthly financial statement. The last statement was that of March. Commerce Bank insisted that the debtor hire an outside accounting firm to revitalize its financial reporting. Ernst & Whinney was hired; its representatives designed a system but made no audit. The June financial statements were prepared by the debtor's comptroller with assistance of Ernst & Whinney. It showed a significant loss in shareholder equity.

This report alarmed the Bank which attempted to audit the accounts receivable. The audit was not successful. The Bank also participated in a physical audit in early August. This was completed but not with any precision. The Bank representative testified that he had little confidence in the accuracy of the inventory, although he participated in the taking of it and expressed no reservation at the time. The evidence does persuade that the inventory taken in early August was nonchalant at least.

On August 14, 1980, the Bank declared its notes due, seized the money in the collateral control account and directed the debtor to shut down its business. On August 19, 1980, the debtor filed its petition for reorganization under Chapter 11 and motions for use of cash collateral and the appointment of an attorney.

The issue of adequate protection rests, of course, upon an analysis of the security which the creditor had. Initially, the question to be answered is the method of valuation. In bankruptcy generally, the valuation is the amount to be received at a forced sale. In a reorganization, however, where the business is on going, there is merit in considering values resulting from sales at market resulting from a bona fide negotiation. Certainly, the thrust of the Uniform Commercial Code, Sections 400.9–504 ff.

V.A.M.S., requiring security to be sold in a reasonably commercial manner, supports such a position.

"The commercial reasonableness requirement currently imposed on virtually all collateral dispositions [by the Uniform Commercial Code] involving personal property is no less appropriate for Chapter 11 collateral impairment valuation purposes . . .

"It is of little more than the articulation of an unexceptional business judgment to hold that, whenever practicable, conversion in the ordinary course of business should be considered the most commercially reasonable collateral disposition simply because and to the extent that it is more productive."

*In re American Kitchen Foods, Inc.*, 9 CBC 537, 550, 553 (D.Me.1976).

Debtor's balance sheet of November 30, 1979, which described its condition at about the time the Capital for Business loan and the first Commerce Bank loan shows the following:

| | |
|---|---|
| Trade Accounts Receivable | $140,715.13 |
| Inventories | 164,812.35 |
| Shop Machinery | 101,248.64 |
| Total | $406,776.12 |

It is these assets to which the Court must look to determine whether the creditor is adequately protected. There is some question, though, as to the time of valuation.

There is no evidence that the creditors inspected the assets or audited the accounts receivable at the time the initial loans were made. There is also evidence to question the November financial statement since they were unaudited and made on cash basis, using "a variation of the variable costing concept." None of the parties or witnesses were able to explain what variation was used except to say that it was income weighted. The November statement also showed, in a note, "debts of $62,954.37 for materials, equipment, etc." While this should have an offsetting asset, no witness knew what that offset was.

Clearly, then, it is difficult to know what the creditors had for security in November of 1979. After Ernst & Whinney was hired

in May to inspect the books, the debtor shifted to an accrual basis of reporting. The statement of July 31, 1980, showed year–to–date loss of $125,795.67. The accountant was unable to say whether this meant the debtor was also losing money in November of 1979, nor was he able to determine how much of the loss resulted from the change in accounting methods. There is little doubt, though, that the debtor was losing money. It does, however, have a substantial back log of orders, competent work force and a good profit margin.

The balance sheet of July 31, 1980 shows the following:

| | |
|---|---:|
| Accounts Receivable | $126,092.06 |
| Inventory | 234,188.91 |
| Fixed Assets | 150,728.34 |
| Buildings | 24,428.79 |
| | $535,438.10 |

At the hearing, the Bank introduced testimony that some of the equipment was worth only about $37,000.00. But, the witness admitted he appraised only those machines with which he was familiar and could not say how much of the total equipment that was. A witness for debtor, an employee of long experience and skill in the business, testified as to the value of other machinery. The president of the company also testified as to the value of some machinery. All of these values were based upon the sale in a commercially reasonable manner.

There was some dispute as to the value of accounts receivable, because of aging. Twenty percent of accounts were 120 days past due. On these, the rate of collection was less than half. The collection rate of the other portions of the receivables was quite good. The creditor also contested the valuation of the inventory, but offered no alternative valuation. Debtor's witnesses testified that sales were made from inventory and that the valuations were realistic. Debtor also offered testimony showing that there was a reasonable prospect the operation would be profitable. As was noted earlier, there was a substantial backlog of orders and debtor had reduced costs by trimming its work force without apparent reducing capacity.

In an ongoing business, where the creditor's security is in accounts receivable and inventory, the value of the security will diminish through use, although it should be replenished as the business continues. The Court is not obligated to protect the creditor better than it did itself when making the loan and obtaining security. At the same time, the Court cannot allow the security to be diminished. The policy of the Code, as was that of the predecessor statutes, is to encourage reorganization if there is a reasonable possibility of success. *In re Colonial Realty Investment Co.*, 516 F.2d 154, 160 (1st Cir. 1975); *In re Bermec Corporation*, 445 F.2d 367 (2nd Cir. 1971). At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.

Here, while there are disputes as to the value of the security, even conservative appraisals reveal values in excess of the debt, although not what could be considered a comfortable amount. It is incumbent upon the Court, therefore, to make specific requirements upon debtor to insure that the creditors will receive adequate protection. *In re Murel Holding Corp.*, 75 F.2d 941 (2nd Cir. 1935). Cf. *In re Matter of Blazon Flexible Flyer, Inc.*, 407 F.Supp. 861 (N.D.Ohio 1976). See Section 361, Title 11, U.S.C. and *In re Yale Express Systems, Inc.*, 384 F.2d 990 (2nd Cir. 1967). It is therefore

ORDERED that debtor be, and it is hereby authorized to use cash collateral in the conduct of its business, subject to the following conditions:

1. The preparation of monthly financial reports, including profit and loss and balance sheets, such preparation to be preceded by a physical inventory, all consistent with the design provided by Ernst & Whinney.

2. The preparation, on a weekly basis, of a report indicating new accounts and accounts collected and the amounts of each.

3. The preparation of a report on a monthly basis showing inventory replaced,

by item and amount, the value of replacement to be in the rate of 25% of the value of goods manufactured.

4. A report, on a monthly basis, of any equipment purchased or sold.

5. The payment to Capital for Business of the sum of $300.00 per week on the principal amount of its loan.

6. The payment to Commerce Bank of the sum of $200.00 per week on the principal amount of its loan.

7. Arrangements for the payment of taxes due, to be made within one month of this order, unless extended for good cause.

8. Payment of interest due to be made in a timely fashion.

9. Previous orders as to salaries of officers and for payment of rent shall remain in effect.

ORDERED further that all acts required herein shall be reported to the Court, in writing, and a copy served upon counsel for Commerce Bank and Capital for Business and all reports required shall be filed with the Court and served upon counsel.

ORDERED further that Commerce Bank shall apply the funds presently in its possession to interest due in September on all loans due it and Capital for Business and the balance applied to the principal on loans made by Commerce Bank.