**In the Matter of Bartley L. MICKLER, etc., Debtor.**

**Bankruptcy No. 80–1226 C.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Feb. 11, 1981.

---

**5.** This is not to say that the Debtors could not make the $20 per month payment under the plan.

Don M. Stichter, Tampa, Fla., for debtor.

Albert I. Gordon, Frank H. Cobb, John K. Olson, Tampa, Fla., for creditors.

ORDER ON MOTION FOR ALLOWANCE FROM SALE PROCEEDS AND ORDER ON MOTION TO ALLOW USE OF CASH COLLATERAL

ALEXANDER L. PASKAY, Chief Judge.

THE MATTERS under consideration are a Motion for Allowance from Sale Proceeds and a subsequent Motion to Allow Use of Cash Collateral, both filed by Bartley L. Mickler, the above-named Debtor. The Court considered the record and finds that despite certain procedural defects which are curable, the Motions are well taken and should be granted subject to certain terms and conditions as stated below.

The facts relevant to the matter under consideration are as follows:

The Debtor is the owner of a large tract of land, mostly undeveloped, located in Pasco County, Florida. The property is encumbered by two mortgages, a judgment lien and an architects lien. On September 30, 1980, the Debtor filed an Application to Sell 116.37 acres out of this property to Minieri Communities of Florida, Inc. free and clear of liens with the proviso that the liens shall attach to the proceeds of the sale. The Court approved the Application after the lienors agreed to the sale. The sale was concluded and the Debtor received approximately $550,000 of which he paid to Southeast Bank of Pasco County (the Bank) $290,000, the holder of the first mortgage, and the remaining balance is still held in escrow. The Debtor does not, however, propose to use the remaining proceeds to make additional payments to the Bank or to his other secured creditors at this time. Rather, the Debtor seeks to keep the funds in escrow to be used to cover a possible capital gain tax obligation which may result from the sale, to use the balance to cover his living expenses, and to make certain contract payments and to cover upkeep and repairs of his other real and personal properties.

The Debtor proposes to make further sales of the property to pay off the balance due on the two mortgages and the judgment liens, but because of the possible adverse tax consequences which may result if the properties are sold prematurely, he is not willing to commit himself to any time table for the liquidation of the properties, proceeds of which is necessary to satisfy the claims of his secured creditors.

Three of the Debtor's secured creditors: the bank; Maranatha Realty Associates, Inc., holder of a junior mortgage; and, Anclote Psychiatric Center, Inc., a holder of a judgment lien, have objected to the use of any part of the sale proceeds. The basis for their objections is that they only agreed to the initial sale of 116.37 acres to Minieri, based upon the express representation that their liens would attach to the proceeds of the sale and only the validity and extent of their liens remained to be determined by the Court and if found to be valid, will be paid at once from the funds held in escrow. They also specifically object to use of the escrow funds for certain payments proposed by the Debtor. In addition, the secured creditors point out that the proceeds of the sale became "cash collateral" and as such is governed by § 363 and cannot be used unless the holder of the liens are adequately protected.

■ Section 363 of the Bankruptcy Code provides that "cash collateral" means cash or other cash equivalents in which the estate and an entity other than the estate have an interest. Whenever non-cash collateral is liquidated, the resulting proceeds are cash collateral so long as the proceeds continue to remain subject to the original lien. Congress in enacting § 363 of the Code gave a special treatment to "cash collateral" for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on "cash collateral" is not deprived of its collateral through unprotected use by the Debtor. On the other hand, it needs no elaborate discussion to show and anyone familiar with reorganization proceedings knows that if a Debtor who seeks relief under Chapter 11 is deprived of the use of cash, its chances to secure rehabilitation is immediately destroyed and very few, if any, entities could survive and effectuate a reorganization without cash. Thus, it is apparent that the conflicting interests of the parties which, by their very nature, are irreconcilable must be balanced according to the circumstances and the equities of the case.

On the one hand, the Court should be anxious to assure a secured creditor that its security interest in cash collateral is not lost because it is used up or dissipated by the Debtor. On the other hand, the Court must also assure that the Debtor's cash which is the life's blood of the business, is available for use even if to a limited extent. The Code provides certain protective devices to assure that the right of a secured party is safeguarded. This could be accomplished by any method which furnishes adequate protection as that term is used in § 361 of the Code, including giving an additional or replacement lien to the secured party to the extent the use of the cash by the Debtor produces a decrease in the cash collateral.

■ The difficulty in this case arises from the fact that this Debtor does not offer an additional or replacement lien to the secured parties, but contends that the secured parties are not entitled to any, and they are not in need of additional adequate protection because the properties remaining in the hands of the Debtor have a far greater value than the encumbrances on same. Therefore, the "equity cushion", according to the Debtor, is legally sufficient by itself to satisfy the requirement of "adequate protection" and for this reason he should be permitted to use a substantial portion of the proceeds obtained from the sale.

The secured parties acknowledge, as they must, that there is a line of cases which have held that a meaningful equity cushion is sufficient by itself to furnish adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 2 CBC 2d 1003 (S.D.Cal.1980); *In re Shockley Forest Industries*, 5 B.R. 160, 3 CCH B.L.Rep. ¶ 67,683 at 78,202 (N.D.Ga. 1980); *In re Rogers Development Corp.*, 2 B.R. 679 (E.D.Va.1980). However, the secured parties point out that these cases dealt with a proceeding to modify or lift the automatic stay under § 362(d)(1), (2) of the Bankruptcy Code and the question was not considered in the context of the use of cash collateral. It is the contention of the secured parties, therefore, that these cases

are not controlling and under § 363 of the Bankruptcy Code, unlike under § 362(d)(2), an equity cushion is not necessarily controlling and the interest of secured parties cannot be adequately protected by an equity cushion alone and a Debtor must provide additional or replacement collateral in order to compensate for the diminution of cash collateral, a proposition which the Debtor is not willing to offer.

Neither research of counsel nor independent research discovered any persuasive authority on this narrow point, although there are decisions dealing with the question of adequate protection which held that in an action to lift the automatic stay, the Court may condition continuation of the stay even though the Debtor has equity in the property by limiting any extension; by requiring the Debtor to make certain payments to his creditors; and by requiring the Debtor to furnish additional collateral. *In re Shockley, supra.* For instance, the Court in the case of *In re Rogers, supra,* although it denied the request for relief from the stay, it stated that it is a paramount consideration to safeguard the interest of a secured creditor and the denial of the request in no way precludes a secured party from reapplying for relief if the secured party is no longer adequately protected.

Even assuming that the creditors are adequately protected in the present case and the Debtor should be permitted to use some of the "cash collateral", it is clear that the Debtor cannot be given carte blanche authority to use the monies presently held in escrow and should not be permitted to pay for all of the items listed in the pro forma statement. Rather, this Court is satisfied that the Debtor should only be permitted to pay ordinary and necessary living expenses and certain other payments which are essential and appear to be proper.

This leaves for consideration the time frame within which this Debtor must satisfy the lien claims of these secured creditors. The Debtor claims that his major stumbling block to closing future sales of real property is the resulting adverse capital gains tax consequences. This Court is satisfied, however, that in weighing the Debtor's tax problems against the rights of these secured creditors to realize on their security interest, the Debtor should not be given an unlimited time, and the time shall not exceed 12 months within which to close sufficient contracts and to pay off these liens. Inasmuch as there is pending litigation involving the Debtor and Maranatha Realty and the amounts owing is in dispute, the payment of interest is deferred until further order of this Court. In the event that the Debtor is unable to close sufficient contracts within the time so stated, this Court will consider the entry of an appropriate order upon ex parte application. In addition, the Debtor should pay to the Bank the currently prevailing mortgage rate at 15% and Anclote Psychiatric Center, the judgment creditor, the legal rate of interest.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Use Proceeds filed by Bartley Mickler be, and the same hereby is, granted subject to the following terms and conditions:

1. The liens of the secured parties shall continue to remain in the cash collateral and the Debtor's remaining 1362.63 acres of real property located in Pasco County, Florida;

2. The Debtor is expressly prohibited from using any monies escrowed to cover contract payments, expenses for upkeep and storage and required charges for either the "Arawak Yacht" or "Friendship Sloop;"

3. The Debtor may apply for nunc pro tunc approval of payment of a reasonable broker's commission in regard to the sale to Minieri Communities of Florida, Inc. which was approved by this Court after notice and a hearing;

4. The Debtor is directed to pay all taxes on the subject real property;

5. The Debtor is authorized to use the amount necessary from the escrow funds to satisfy the capital gains tax obligations resulting directly from the court approved sale;

6. The Debtor shall have 12 months within which to close sufficient real estate contracts and satisfy the remaining lien claims, or the stay will be lifted upon ex parte application of a party in interest;

7. The Debtor shall resume the interest payment on the first mortgage held by Southeast Bank of Pasco County and inasmuch as said mortgage obligation became due and payable in the summer of 1980, the Bank shall be entitled to an interest at the currently prevailing mortgage lending rate to-wit 15%. Payment of the contractual interest rate on a second mortgage held by Maranatha Realty Associates, Inc. is deferred pending outcome of litigation between the Debtor and the Debtor may use the funds held in escrow derived from the sale of the collateral to make these payments;

8. The Debtor may not use any part of the escrow funds to pay for the maintenance and upkeep of his North Carolina properties;

9. The amount of escrow funds which the debtor *may use* for living expenses shall not exceed in any given month the sum of $2,000;

10. The Debtor is authorized to purchase molasses for feed on an advance from the cash collateral. The amount of that purchase shall be reported to the Court. In addition, all proceeds from the sale of bulls, cows, calves or horses shall be reported to the Court and the monies shall be used to replenish the cash collateral advanced to the Debtor for the molasses purchase;

11. The Debtor shall be permitted to withdraw from the escrow fund the following monies which shall be used to pay the following outstanding obligations:

| Walt's Auto | auto parts | $ 112.92 |
|---|---|---|
| Lakeside Farm & Garden | feed | 81.86 |
| Gas & Save | misc. personal expenses | 127.73 |
| General Telephone | home phone | 110.53 |
| Fla. Farm Bureau | Homeowners Ins. | 203.00 |
| | 1980 Workman's Compensation | 613.00 |
| | | $1,049.04 |

12. Inasmuch as there is nothing in this record and no testimony was presented with respect to amounts needed for the Pasco Ranch expenses, this Order is without prejudice to the Debtor's rights to file an application with an itemization of the Debtor's monthly expenses in connection with the Ranch.