In re A & A TRANSPORT, INC., Debtors.

ASSOCIATES COMMERCIAL CORP., Plaintiff,

v.

A & A TRANSPORT, INC., Defendant.

Bankruptcy No. 80–00559–G.
Adv. No. 4–80–0190.

United States Bankruptcy Court,
D. Massachusetts.

May 8, 1981.

William C. Tattan, Worcester, Mass., for plaintiff.

Philip J. Hendel, Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT TO RECLAIM PERSONAL PROPERTY

PAUL W. GLENNON, Bankruptcy Judge.

A & A Transport, Inc. (the "Debtor") filed an original petition for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101, et seq.) on August 29, 1980. The plaintiff, Associates Commercial Corporation ("Associates") filed the within Complaint To Modify Stay on November 7, 1980. Associates alleges that the Debtor is in arrears in its payments on two 1977 Kenworth Tractors and seeks to reclaim their collateral.

On August 1, 1977 Archer Trucking Inc. purchased from Kenworth of Boston, Inc. two 1977 Kenworth, Model K100 tractors,

under conditional sales contracts and security agreements (although it isn't clear from the record how these vehicles came into the possession of the Debtor, there appears to be no dispute that these vehicles are in its possession and are subject to the security interest). That same day the seller assigned the contracts to Associates and the security interest of Associates is properly reflected on the Certificate of Title of each vehicle. As of the filing date of the Chapter 11 petition, the combined balance due for the two trucks was $24,254.92. Associates alleges that the Debtor's Schedules filed with its petition indicate a combined value of $14,000 for the two trucks as of the filing date, and that as a result, it is entitled to modification of the automatic stay pursuant to § 362(d) of the Bankruptcy Code (11 U.S.C. § 362). The Debtor has countered by introducing evidence to indicate that the combined value of the two tractors is somewhere between $34,000–$50,000, and has argued that it should only be required to pay the monthly depreciation of $500 as adequate protection pursuant to § 361 of the Code.

## DISCUSSION

Section 362(d) of the Code recites the standard by which the Bankruptcy Court shall grant a request for modification of the automatic stay.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In this case we are concerned with §§ (d)(2) of § 362 dealing with the Debtor's equity (or lack thereof) and the necessity of the property for an effective reorganization. It is important to note that § 362(d)(2) has two criteria for relief from the stay, both of which must be shown, to wit: 1. Debtor's lack of equity, *and* 2. property not necessary to an effective reorganization.

As to the first requirement, § 362(g) states that the party requesting relief from the stay has the burden of proof on the issue of the debtor's equity in the property, and the party opposing the relief has the burden of proof on all other issues. In the case at hand, Associates has not introduced expert appraisals of the vehicles for purposes of determining equity, but has relied solely on the value listed in the Debtor's schedules. The Debtor, on the other hand, introduced the testimony of its operations manager as to the cost of replacing these two vehicles with ones which were in similar condition ($40,000–$50,000). Further, the Debtor's expert appraiser gave a value of $17,000 for each truck in its current condition, adding up to a total value of $34,000. All of the Debtor's witnesses indicated, as well, that the vehicles were regularly maintained by in-shop mechanics both preventively and correctively. Finally the Debtor's operations manager, as well as the chairman of its Creditors Committee both indicated that these vehicles were used daily and were the best vehicles that remained in use by the Debtor. As such, they both felt that the two tractors were essential to the Debtor's operations, and to its reorganization efforts.

From the foregoing, it is apparent to the court that the plaintiff Associates has failed to carry its burden of proof on the question of the Debtor's lack of equity in the vehicles. The court recognizes that the Debtor's schedules may list the vehicles as having a value of $14,000, but that type of valuation is often arrived at without the benefit of accurate appraisals, and very often is simply an arbitrary figure arrived at in the Debtor's haste to file its petition. Therefore, although the Debtor signs the schedules under oath, the values listed therein are only reasonable estimates, and very often the person charged with prepar-

ing the schedules has little or no knowledge about the value of certain types of property listed therein. As a result, it is possible that the "scheduled value" and the actual "market value" may differ substantially. This court has always relied more heavily upon the appraisals of experts in valuing property than on debtors whose estimates may bear no relationship to reality. I have often said that there is no more elusive term in the English language than the word "value". In order to come to some realistic definition of that term on a case by case basis, the court must look to experts in the particular field which is involved, be it real estate, machinery, or used trucks. In this instance, the only experts were those of the Debtor, and the lowest value submitted for the two trucks together was $34,000. In view of the fact that these vehicles cost approximately $45,000 each when new, are less than 4 years old, and have received regular maintenance on an ongoing basis, I don't feel that figure is out of line, and would find that the tractors are worth at least that amount. On that basis, it is clear that there is sufficient equity for the Debtor to dismiss the complaint of Associates. The value of the collateral is almost $10,000 over the above the pre-petition debt. As for post petition charges which Associates alleges should be included in the determination of equity, it is clear that upon liquidation Associates would be entitled to post-petition charges and interest to the extent the value realized for the collateral allowed them to be paid. See, 11 U.S.C. § 506(b). However, that factor does not enter into the court's determination in this case for if there was no pre-petition equity, there would be no recovery to Associates for post-petition charges, and it could not make a claim against the estate for those amounts. Relief from Stay under § 362(d) is predicated upon the balance of the debt as of the filing date, and the value of the collateral available to satisfy that debt at the time of decision.

■ Finally, the plaintiff here seems to have misunderstood the meaning of § 362(g). It is clear from the statute that the creditor seeking relief has only the bur-den with regard to equity. In that regard, my earlier remarks make it clear that the creditor must establish the amount that is owed as of the filing date and the value of the collateral securing that debt. If there is no equity, or even if there is, the burden of showing how the creditor is or can be adequately protected is exclusively upon the debtor. However, it is anomalous to say that because the Debtor has the burden of proving adequate protection that the creditor then may rest on its proof of a secured debt. Many courts have held that an "equity cushion" is sufficient protection for creditors in relief from stay actions. *In re Ruark*, 7 B.R. 46, 7 B.C.D. 59 (Bkrtcy.D. Conn.1980); *In re Ware Spaces, Inc.*, 5 B.R. 204 (Bkrtcy.D.Haw.1980); *In re Shockley Forest Industries, Inc.*, 5 B.R. 160, 6 B.C.D. 642 (Bkrtcy.D.Ga.1980); *In re Breuer*, 4 B.R. 499, 6 B.C.D. B6 (Bkrtcy.S.D.N.Y. 1980). And, while it is clear that "lack of equity" under § 362(d)(2) is but one cause for relief, it is not sufficient for a creditor to file a complaint which alleges lack of adequate protection, without more, and then to "toss the ball into the Debtor's court" by arguing that it has the burden of proving adequate protection. If a creditor sues for relief under § 362(d)(1), he has the burden of proving the lack of adequate protection, for that is the principal allegation of the complaint. If he can establish a prima facie case for the *lack* of adequate protection, the burden would then shift to the Debtor to show that adequate protection was indeed available.

### CONCLUSION

■ Upon the foregoing, it is clear that upon either theory the plaintiff Associates has failed to meet its burden of proof. There does appear to be sufficient equity for the Debtor and apparent necessity for the possession of the collateral for purposes of reorganization such that Associates should be denied recovery under § 362(d)(2). As for the lack of adequate protection under § 362(d)(1), I conclude that here, too, the plaintiff has failed to meet its burden of showing to the court that its property

rights are more probably than not subject to impairment. Further, the Debtor has offered to pay $500 per month as adequate protection against continuing depreciation. In view of the past maintenance record of these vehicles and the testimony of witnesses that the collateral is in good working condition, I conclude that a monthly payment in such amount will adequate protect the plaintiff against continuing loss, and will help to reduce arrearages at the same time. Therefore, I would grant judgment for the defendant-Debtor in this case, but would order the payment of $500 per month to the plaintiff beginning on June 1, 1981. Judgment shall enter accordingly.