In re XINDE INTERNATIONAL, INC., Debtor.

WORCESTER COUNTY NATIONAL BANK, Plaintiff,

v.

XINDE INTERNATIONAL, INC., Defendant.

Bankruptcy No. 4–81–00438–G.
Adv. No. 4–81–0137–G.

United States Bankruptcy Court, D. Massachusetts.

Aug. 5, 1981.

Howard N. Gorney, Acton, Mass., for plaintiff.

Steven A. Kressler, Worcester, Mass., for defendant.

**MEMORANDUM AND DECISION CONCERNING DEBTOR'S MOTION TO USE CASH COLLATERAL AND PLAINTIFF'S COMPLAINT FOR RELIEF FROM AUTOMATIC STAY**

PAUL W. GLENNON, Bankruptcy Judge.

The debtor filed its petition for reorganization pursuant to 11 U.S.C. § 1101 et seq.

**214**

on April 30, 1981. Shortly thereafter the debtor filed an application to use cash collateral. 11 U.S.C. § 363. Its primary secured creditor, Worcester County National Bank, objected to the motion to use cash collateral, and filed its own complaint for relief from automatic stay. 11 U.S.C. § 362. An evidentiary hearing was held on the debtor's motion to use cash collateral and later, when the complaint for relief from stay was to be heard, the parties stipulated that the transcript from the first hearing would serve as evidence for the relief from stay issues. After consideration of the evidence, pleadings and memoranda of law submitted by the parties, the court has made the following conclusions of fact and law on both issues.

## FACTS

Xinde International, Inc. ("Xinde" or the "debtor") has been engaged in the manufacture of thermoplastic moldings since 1975. It has experienced steady growth over the years, showing profits for the 3 years prior to the filing of its petition of reorganization. Its Chapter 11 petition was precipitated by the filing of a reorganization petition by its largest customer. It is currently being operated, generating sales, and showing some profit in its operation under the Chapter 11 petition. The Worcester County National Bank (the "bank" or "plaintiff") is the sole secured creditor in the case, and has undisputed security interests in the equipment, fixtures, inventory, and accounts receivable. The accounts receivable in the hand of the debtor total $18,000. It is this money which the debtor seeks to use as cash collateral to purchase more inventory to remain in operation.

The bank currently holds secured interests which are valued at approximately $147,000. The debtor presented evidence of the fair market value of its manufacturing equipment at $216,000, and its finishing equipment was valued at $25,000. The plaintiff requested that the court look to forced sale or liquidation values in its deliberation, but no specific figures on the valuation of the manufacturing equipment were presented by the bank.

Both parties focused much trial time on the question of the value of the land and buildings which Xinde leases. While one of the principal shareholders of Xinde is also a principal in the realty trust which lets the buildings and land to Xinde, the leasehold is not available to Xinde as an asset. The values of the land and buildings, and the amount of encumbrances upon them are not relevant to Xinde's situation. The determination of adequate protection to allow use of cash collateral and whether or not relief from stay will be granted must be based on the value of the assets and collateral that are actually available to the debtor.

The manufacturing equipment which includes all of the equipment needed by Xinde to produce its molded plastic product is the highest valued asset against which the liability of the debtor can be measured to see if the debtor has an equity cushion. The valuation of the molding equipment at $216,000 leaves the debtor an equity cushion of approximately $69,000. As the molding equipment consists of one basic pumping unit with several presses attached, and is the sole operating equipment of the debtor's business, should the bank foreclose on its lien, the debtor would be shut down and its chances of rehabilitation destroyed.

## DISCUSSION

The issue of relief from stay and use of the cash collateral will be discussed separately. Under U.S.C. § 362(g)(1) the plaintiff has a burden to show that the debtor does not have equity in the property. In this case, the debtor has sufficient equity in the manufacturing equipment at a fair market value in its operating equipment to provide a $69,000 equity cushion. The debtor has demonstrated that this operating equipment is essential to the debtor's continued functioning as an operating business, and is a necessary part of the debtor's effective reorganization. 11 U.S.C. § 362(d)(2)(B). The plaintiff has objected to use of a fair market valuation for the

equipment involved. In *In re Shockley Forest Industries, Inc.*, 5 B.R. 160 (Bkrtcy.N.D. Ga.1980), the court held that collateral being used in a going business is appropriately valued at the fair market value, as if it were being sold as part of the going concern. Furthermore the plaintiff bank has not provided an objective standard by which any other measure of value of the collateral can be made.

■ When a court is deciding whether to allow relief from the automatic stay, it balances the following factors:

1. Does the plaintiff-creditor have a valid lien?
2. What is the amount of the indebtedness against the collateral?
3. What is the value of the collateral?
4. Is the property necessary to an effective reorganization?
5. Is the creditor adequately protected? See *In re Born*, 10 B.R. 43 (Bkrtcy.S. D.Tex.1981).

■ The validly secured creditor in this case has adequate protection in that its $147,000 lien is fully secured by the value of $216,000 of the manufacturing equipment, and, is further protected by an equity cushion. The equipment is necessary for an effective reorganization of the debtor's affairs. Therefore the plaintiff is not entitled to relief from stay at this time.

As to the issue of adequate protection to the creditor while its cash collateral is in use, the bank has objected to the use of the cash collateral unless some form of adequate protection is provided. 11 U.S.C. § 363(c)(2)(B) and § 363(e).

The concept of adequate protection is based on two contradictory realities. One is that the use of cash collateral is essential to the success of the reorganization. The other is that the use necessarily diminishes the value of the security bargained for by the creditor, and the secured position ought not be allowed to deteriorate. *In re Heatron, Inc.*, 6 B.R. 493, 494 (Bkrtcy.W.D.Mo.1980).

■ The drafters of the Bankruptcy Code specifically addressed this dilemma in § 363(e). A creditor whose cash collateral is to be used may request the court to condition such use to maintain adequate protection. Xinde has argued that its equity cushion and the value of the goodwill of the ongoing business are sufficient to protect the creditor's interest. While it is true that use of cash collateral in an ongoing business to maintain its business activity may enhance the estate, and that the collateral would ordinarily be replenished as the business continues, a particular creditor can have realistic fears that replenishment of the cash collateral will not occur. The court in a reorganization case must balance the needs of the creditor's protection against the debtor's likelihood of a successful rehabilitation. If the court acts too swiftly and too rigidly in requiring adequate protection, this debtor's chance of reorganization may be so severely damaged as to be non-existent. In this case, the debtor has equity in its equipment and fixtures sufficient to secure the entire debt, and maintain at least a 50% equity cushion, yet it is unable to generate sufficient cash to purchase raw materials to make its product. Without a manufactured product, the debtor will not be able to rehabilitate itself.

Because Xinde is showing a marginal profit in reduced operations, the court believes that at this time this debtor is operating at a break-even point or at a small profit, and the cash collateral will be replenished so as to maintain the creditor's secured position. Furthermore, the debtor has shown that it has a substantial equity cushion available to its creditors. Yet, at the same time an equity cushion in equipment that may be depreciating will not adequately protect a creditor for very long without some further signs of assurance that its interests are being maintained.

■ Pursuant to 11 U.S.C. § 363(e), this court is going to allow the debtor to use the cash collateral without court-ordered payments to the creditor for a period of 90 days. During this time, the court is instructing the debtor to move toward the formation of a plan. For Xinde to success-

fully reorganize, it will have to negotiate a mutually satisfactory arrangement with this creditor. Ultimately the best assurance to the bank would be a plan and the regular repayment of the debtor's obligation to it. The court is hopeful that this 90 day period will culminate in the formation of a workable plan. If a plan cannot be arranged and confirmed by that time, the court is cognizant that a more concrete form of assurance of adequate protection may be needed by this creditor. Therefore if the debtor is not able to formulate and confirm a plan in 90 days, the creditor can request an immediate hearing for the purpose of reconsidering the creditor's request for periodic cash payments to protect its interest.