In re CHARLES McARTHUR
DAIRIES, INC., Debtor.

SOUTHEAST FIRST NATIONAL BANK
OF MIAMI, et al., Plaintiffs,

v.

CHARLES McARTHUR DAIRIES, INC., Debtor, and Barnett Banks Trust Company, N.A., as Trustee under the terms of a Trust and Security Agreement dated July 3, 1979 (Trust No. 33–6664), Defendants.

Bankruptcy No. 81–24–BK–J–GP.
Adv. No. 81–329.

United States Bankruptcy Court,
M. D. Florida.

Dec. 22, 1981.

Timothy J. Norris, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiffs.

Douglas McClurg, Mahoney, Hadlow & Adams, Jacksonville, Fla., for Barnett.

Carl W. Hartley, Jr., Thomas, Thomas, Hartley & Spraker, P.A., Orlando, Fla., for debtor.

FINAL JUDGMENT ON PLAINTIFFS' COMPLAINT FOR RELIEF FROM AUTOMATIC STAY AND DEBTOR'S COUNTERCLAIM TO USE CASH COLLATERAL

GEORGE L. PROCTOR, Bankruptcy Judge.

THIS CAUSE came on before the Court for Preliminary Hearing on November 2, 1981 and for Final Hearing on November 30, 1981 on Plaintiffs' complaint seeking relief from the automatic stay provisions of 11 U.S.C. § 362 and on the Debtor's counterclaim seeking to utilize cash collateral pursuant to 11 U.S.C. § 363. The Court having considered the evidence presented at the Preliminary and Final Hearings, having carefully considered the extensive memoranda of law and fact presented by the parties to this litigation and having heard argument of counsel, hereby FINDS, CONCLUDES and ADJUDGES as follows:

FINDINGS OF FACT

1. This adversary proceeding involves the disposition of $2,200,000 which is the approximate current balance in a trust account held by Defendant, BARNETT BANK'S TRUST COMPANY, N.A. (hereinafter "BARNETT").

2. The trust account was established in July, 1979, when the Debtor purchased its farm premises from Plaintiffs, pursuant to a document styled "Trust and Security Agreement" which was an integral part of that purchase transaction.

3. In the July, 1979 purchase transaction, the Debtor executed and delivered to Plaintiffs three (3) promissory notes. Promissory note 1 was in the original principal amount of $3,004,636.26 plus interest, and is secured by a purchase money second mortgage lien held by Plaintiffs on real property owned by the Debtor. Promissory note 2 was in the original principal amount of $4,185,000.00 plus interest, and is secured by Plaintiffs' security interest in the trust account funds herein at issue. Promissory note 3 was in the original principal amount of $4,346,038.89 plus interest, and is secured by a purchase money second mortgage lien held by Plaintiffs on real property owned by the Debtor. The Plaintiffs' mortgage lien securing repayment of promissory note 1 also secures the repayment of promissory note 3 and the Plaintiffs' mortgage lien securing repayment of promissory note 3 also secures repayment of promissory note 1. Promissory note 3 is further secured by a security interest held by Plaintiffs in personal property located on the Debtor's farm premises. Promissory note 2 is secured only by the trust account funds which are the subject of this adversary proceeding. The Plaintiffs' two mortgage liens encumber all real property owned by the Debtor and there are no inferior mortgage liens on the property.

4. The total indebtedness now owed to Plaintiffs by the Debtor is approximately $10,000,000. Approximately $2,150,000 of this debt is secured by Plaintiffs' security interest in the trust account funds herein at issue. Approximately $7,850,000 of the debt is secured by Plaintiffs' mortgage liens and security interest in personal property of the Debtor.

5. The "Trust and Security Agreement" which created the trust account refers to the Debtor as the "settlor" of the trust account, to BARNETT as the "trustee" and to Plaintiffs as the "secured party and beneficiary" of the trust account. The Court finds that the "Trust and Security Agreement" provides in pertinent part:

(a) That under certain circumstances the Debtor has the right to receive proceeds of the trust account which would otherwise be payable to Plaintiffs;

(b) That the Debtor has all rights provided under the Uniform Commercial Code with respect to the trust account;

(c) That the Debtor is entitled to receive out of the trust account any balance therein not payable to Plaintiffs (currently approximately $50,000).

6. The trust account is composed of various negotiable instruments, securities and other cash equivalents which can be readily converted to cash by BARNETT.

7. On January 12, 1981, the Debtor filed its petition seeking relief under Chapter 11 of the Bankruptcy Code.

8. On October 13, 1981, Plaintiffs filed their complaint herein seeking:

(a) an adjudication that Plaintiffs hold a validly perfected security interest in the trust account funds, and

(b) relief from the automatic stay in order for Plaintiffs to take immediate possession of the trust account funds.

9. The Debtor answered Plaintiffs' complaint alleging that Plaintiffs were receiving adequate protection for continuation of the automatic stay by the surplus balance in the trust account and by the large "equity cushion" in the real property encumbered by Plaintiffs' mortgage liens. The Debtor also raised by way of defense to Plaintiffs' complaint its contention that the funds in the trust account were needed to effectively reorganize the Debtor.

10. Simultaneously with its answer to Plaintiffs' complaint, the Debtor counterclaimed against Plaintiffs seeking:

(a) an adjudication that the trust account funds constitute cash collateral of the Debtor's estate pursuant to 11 U.S.C. § 363(a), and

(b) the right to utilize all of the cash collateral in order to fund its reorganization plan, and

(c) proposing, as and for adequate protection to Plaintiffs for the continuation of the automatic stay and for the Debtor's use of the cash collateral, additional replacement adequate protection liens to Plaintiffs in the form of an increase in the mortgage liens held by Plaintiffs in the full amount of the current balance of the trust account funds.

11. The only evidence received by the Court on the value of the additional adequate protection mortgage liens proposed by the Debtor was the parties' stipulation in open Court as follows:

"That the fair market value of the real property which secures repayment of the Ten Million Dollars in debt to the Estate of McArthur [Plaintiffs] exceeds the amount of that debt and the first mortgage on the property. In other words, if this thing goes completely sideways, they are going to get paid." Transcript of November 30, 1981 Final Hearing at Page 16.

12. Based upon uncontroverted evidence received by the Court at the Preliminary and Final Hearings held in this adversary proceeding, the Court finds that:

(a) the Debtor has approximately $50,000 of equity in the trust account (the surplus balance referred to above). This equity of the Debtor in the trust account funds is over and above the accelerated balance owed Plaintiffs in connection with the trust account funds, $435,000 of which accelerated balance is not due to Plaintiffs until June 10, 1982.

(b) it will be impossible to effectively reorganize the Debtor without the Debtor's utilization of a substantial portion of the trust account funds.

(c) the Debtor intends to use the trust account funds for legitimate business purposes such as purchasing dairy animals and paying business expenses.

## CONCLUSIONS OF LAW

13. Pursuant to 11 U.S.C. § 362(d), Plaintiffs are entitled to relief from the automatic stay if Plaintiffs demonstrate either:

(a) a lack of adequate protection with respect to the trust account funds [§ 362(d)(1)]; or

(b) the Debtor has no equity in the trust account funds and the funds are not needed to effectively reorganize the Debtor [§ 362(d)(2)].

14. With respect to the adequate protection issue under § 362(d)(1), the surplus balance in the trust account which belongs to the Debtor and the stipulated "equity cushion" in the real property will provide Plaintiffs with adequate protection for the continuation of the automatic stay. *See In re Rogers Development Corp.*, 2 B.R. 679, 5 B.C.D. 1392 (Bkrtcy.Ed.Va.1980, Blackwell N. Shelly, Bankruptcy Judge); 2 Collier on Bankruptcy, 15th Ed. paragraph 361.01, page 361–9.

15. The surplus or "equity cushion" in the trust account funds is in cash or cash equivalents and is not subject to evaporation upon a liquidation of the property in some type of forced sale at which the property might bring less than its fair market value. However, because the Plaintiffs' mortgage liens and security interest in the trust account funds are not presently cross-collateralized and because the surplus or "equity cushion" in the trust account funds is not at what the Court would consider to be a comfortable level, the Court concludes the Plaintiffs must receive additional adequate protection from the Debtor for the continuation of the automatic stay. The Debtor has proposed that this adequate protection be in the form of an increase in the amount of debt secured by Plaintiffs' mortgage liens. Based upon the stipulated "equity cushion" in the Debtor's real property, the Court concludes that the value of the Debtor's proposed adequate protection is sufficient for the automatic stay to remain in effect.

16. Effective upon the entry of this Final Judgment, as and for adequate protection for the continuation of the automatic stay, the Plaintiffs' mortgage liens on all real property owned by the Debtor shall be increased by a total of $500,000. The Plaintiffs' mortgage lien securing the repayment of promissory note 1 is increased by $250,000 and the Plaintiffs' mortgage lien securing repayment of promissory note 3 is also increased by $250,000.

17. With respect to the second basis for relief under § 362(d), the Court concludes that the Debtor does have an equity in the trust account funds and that these funds are essential to an effective reorganization of the Debtor. Accordingly, Plaintiffs failed to establish the requirements to have the stay lifted pursuant to 11 U.S.C. § 362(d)(2).

18. Because the Plaintiffs failed to establish either of the two grounds to have the stay lifted pursuant to § 362(d), the relief prayed for in Plaintiffs' complaint seeking to terminate the automatic stay and award Plaintiffs immediate possession of the trust account funds is DENIED. The automatic stay shall remain in effect with respect to Plaintiffs.

CASH COLLATERAL

19. 11 U.S.C. § 363(a) defines cash collateral as:

"In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest."

20. § 363(a) requires that the Debtor have "an interest" in the trust account funds for those funds to constitute cash collateral of the Debtor's estate. The Plaintiffs initiated this adversary proceeding with a complaint filed against the Debtor seeking an adjudication of Plaintiffs' security interest in the funds. The Debtor would not have been made a party defendant to such a claim filed by the Plaintiffs if the Plaintiffs did not feel the Debtor had "an interest" in the funds. Accordingly, the allegations contained in Plaintiffs' complaint filed in this adversary proceeding estop Plaintiffs from asserting that the Debtor has no interest in the funds in Plaintiffs' response to the Debtor's cash collateral counterclaim filed herein.

21. Assuming *arguendo*, the Plaintiffs are not estopped from asserting the Debtor has no interest in the trust account funds, the Court concludes that the sub-

stantial rights granted to the Debtor in the "Trust and Security Agreement" which created the trust account provide the Debtor with a sufficient interest in the trust account funds for those funds to constitute cash collateral of the Debtor's estate.

22. Because the Debtor has "an interest" in the funds and due to the fact that the funds consist of "negotiable instruments", "securities" and "other cash equivalents" within the definition of § 363(a), the Court concludes that the trust account funds held by BARNETT constitute cash collateral of the Debtor's estate.

23. The Court also concludes that the cash collateral funds are essential to an effective reorganization of the Debtor.

24. 11 U.S.C. § 363(e) requires that Plaintiffs receive adequate protection in connection with the Debtor's use of the cash collateral and places the burden on the Debtor to demonstrate such adequate protection. The Debtor has proposed that Plaintiffs receive, as and for adequate protection for the Debtor's use of the cash collateral, additional replacement adequate protection liens in the form of an increase in the mortgage liens of Plaintiffs for so much of the cash collateral the Court permits to be utilized by the Debtor.

25. The only evidence received by the Court as to the value of the replacement adequate protection mortgage liens proposed by the Debtor was the parties' stipulation quoted in paragraph 11 of this Final Judgment. Accordingly, the Court concludes that the additional adequate protection mortgage liens proposed by the Debtor do have sufficient value to secure repayment of any cash collateral used by the Debtor.

26. In this context, the issue becomes whether an "equity cushion" in real property may constitute sufficient adequate protection for a debtor's use of cash collateral under § 363(e). The Court concludes that such an "equity cushion" will provide Plaintiffs with sufficient adequate protection for the Debtor's use of the within cash collateral. *See In re Oak Glen R-Vee,* 8 B.R. 213, 7 B.C.D. 138 (Bkrtcy.C.D.Cal.1981, James R.

Dooley, Bankruptcy Judge); *In re Xinde International, Inc.,* 13 B.R. 212, 7 B.C.D. 1204 (Bkrtcy.D.Mass.1981, Paul W. Glennon, Bankruptcy Judge); *In re Heatron, Inc.,* 6 B.R. 493, 6 B.C.D. 1008 (Bkrtcy.W.D.Mo. 1980, Joel Pelofsky, Bankruptcy Judge) and *In the Matter of Bartley L. Mickler,* 9 B.R. 121, 7 B.C.D. 607 (Bkrtcy.M.D.Fla.1981, Alexander Paskay, Bankruptcy Judge).

27. The relief sought by the Debtor in its counterclaim seeking to utilize cash collateral is GRANTED under the following terms and conditions:

(a) The cash collateral funds will be made available to the Debtor on the date this Court enters a confirmation order in the Debtor's reorganization proceedings.

(b) The Debtor shall be entitled to utilize only that portion of the cash collateral funds needed by the Debtor for an effective reorganization, which amount shall be determined by further order of this Court.

(c) The amount of Plaintiffs' mortgage liens shall be additionally increased by that amount of the cash collateral which is utilized by the Debtor on a dollar for dollar basis.

28. Because the Preliminary and Final Hearings herein were scheduled by the Court on the expedited basis mandated by 11 U.S.C. § 362(e), the Court dismissed, without prejudice to any interested party filing for relief in a court of competent jurisdiction, all claims filed in this adversary proceeding other than Plaintiffs' claims seeking to have the stay lifted and the Debtor's claims seeking to utilize cash collateral. This Final Judgment is not an adjudication of any claims so dismissed by the Court.

29. This Court shall retain jurisdiction of this adversary proceeding for the limited purpose of determining the amount of cash collateral to be utilized by the Debtor and for the entry of an order directing BARNETT, which now holds the funds, to disburse the funds to the Debtor.