**In re AUTOMATIC VOTING MACHINE CORPORATION, Debtor.**

**FIRST TRUST UNION BANK, Plaintiff,**

**v.**

**AUTOMATIC VOTING MACHINE CORPORATION, Defendant.**

**Bankruptcy No. 82–10267 M.**
**AP–82–1568 M.**

United States Bankruptcy Court, W.D. New York.

Feb. 3, 1983.

Johnson, Peterson, Tener & Anderson, Jamestown, N.Y. (John K. Plumb, Jamestown, N.Y., of counsel), for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y. (Donald P. Sheldon, Buffalo, N.Y., of counsel), for debtor-defendant.

BERYL E. McGUIRE, Bankruptcy Judge.

The debtor, Automatic Voting Machine Corporation, filed its petition for relief under the provisions of Chapter 11 of the Bankruptcy Act on February 2, 1982. The debtor, as its name suggests, is engaged in the manufacture and sale of voting machines. Its plant is located in the city of Jamestown, New York.

On September 3, 1982, First Trust Union Bank ("First Trust") filed a complaint which, in part, seeks relief from the automatic stay provided by § 362, Title 11, United States Code. That complaint alleges sums due it and in default in excess of $800,000. In the absence of adequate protection, it seeks permission to foreclose two mortgages and security interests in the debtor's equipment. By way of answer and amended answer, the debtor-defendant, Automatic Voting Machine Corporation ("Automatic") questions the validity of First Trust's mortgages and security interests, interposes a number of affirmative defenses, and asserts four counterclaims which relate to a prepetition setoff of the debtor's bank account. First Trust has replied to Automatic's counterclaims.

A trial of the issues commenced on November 4, 1982, continued on November 5th, and was completed on December 7th. Continuation of the automatic stay to accommodate an orderly trial, briefing, and decision on the merits has been consented to by the plaintiff. Briefing by the parties was completed on January 24, 1983.

### I

A central and threshold issue between the parties is the validity of the two mortgages and security interests held by First Trust. The history of those instruments is essential to an understanding of the issue.

Prior to First Trust's involvement with the debtor, Marine Midland Bank ("Marine") had been the debtor's principal source of financing. Marine had made two loans to Automatic; the first evidenced by a $150,000 note and the second by a $400,000 note. Collateral for the notes took the form of a first and third mortgage on Automatic's real estate and two security agreements (covering principally the debtor's equipment). The two mortgages and one of the security agreements contained provisions making them applicable to future advances from Marine to Automatic.

In early 1981, and apparently in response to Automatic's need for additional financing, First Trust agreed to become Automatic's banker and to advance that additional financing. First Trust issued a commitment letter to Automatic to that effect. The ensuing transaction, which departed in a few material respects from the outline in the commitment letter, gives rise to the dispute between Automatic and First Trust as to the validity of the mortgages and security agreements. Perhaps because of a third party guarantee, perhaps to save costs, or perhaps because it seemed to make good sense, First Trust did not insist on the issuance by Automatic of new security instruments.

Whatever the reason, what the parties assented to and did is clear enough; only the legal effect of their actions is in dispute. First Trust paid the Marine notes, and Marine, in turn, marked them paid and returned them to the debtor and assigned all of its interests (in the debt, mortgages and security agreements) to First Trust. Concomitant therewith, Automatic issued two notes to First Trust; one substituting for the former Marine debt and the other for the new financing. Later there was additional lending by First Trust to Automatic.

The principal argument of the debtor is that when First Trust permitted Marine to cancel its notes, the debt and, consequently, the security instruments supporting that debt were discharged. While facially appealing and persuasively argued, the Court rejects the debtor's argument.

Section 1–103 of New York's Uniform Commercial Code provides in pertinent part:

§ 1–103. *Supplementary General Principles of Law Applicable*

Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant

... or other validating or invalidating cause shall supplement its provisions.

In this case, the parties' intentions and actions constitute a classic example of a novation with Marine as a creditor being displaced, and First Trust as a creditor being substituted. *See,* Restatement (Second) of Contracts § 280; S. Williston, a Treatise on the Law of Contracts §§ 1865, 1867 (3d ed. 1972 & supp. 1982); *Cf. Warren Petroleum Corp. v. Federal Power Com'n,* 282 F.2d 312 (10th Cir.1960). While cancellation under the Uniform Commercial Code obviously destroys the negotiability of an instrument, cancellation and surrender contemporaneous with the issuance of a renewal note under former law and, in this Court's judgment, under the Uniform Commercial Code, here would not effect payment. *See, Cohen v. Rossmoore,* 225 A.D. 300, 233 N.Y.S. 196 (1st Dept., 1929). Though in this case coupled with a novation and an assignment, the Court sees no basis for reaching a different result.

Hence, First Trust, in the shoes of Marine, possesses valid mortgages against the debtor's real estate and a security interest in the debtor's equipment securing all of its debt.

## II

### ADEQUATE PROTECTION

First Trust, as a secured creditor, therefore, is entitled to adequate protection. *See,* 11 U.S.C. § 362(a). One basis for finding adequate protection may be the existence of an "equity cushion." *See, In Re Anderson-Walker Industries, Inc.,* 1 C.B. C.2d 831, 3 B.R. 551 (Bkrtcy.S.D.Cal.1980); *In Re Rogers Development Corp.,* 1 C.B. C.2d 499, 5 B.C.D. 1392, 2 B.R. 679 (Bkrtcy. E.D.Va.1980); *In Re San Clemente Estates,* 2 C.B.C.2d 1003, 6 B.C.D. 838, 5 B.R. 605 (Bkrtcy.S.D.Cal.1980).

On February 2, 1982, when Automatic filed its bankruptcy petition, its debt to First Trust was $850,049.12. On November 4, 1982, the date of trial, the total indebtedness was $967,488.98.[1] Interest and penalties continue to accrue.

Although the debtor has the burden of proving it can adequately protect the objecting party, the objecting party clearly has the burden on valuation issues in stay litigation. *See,* 11 U.S.C. § 361. Additionally, the appropriate method of valuation to gauge whether the objecting party is adequately protected in a reorganization case is "going concern" or fair market value. *See, In Re Rogers Development Corp., supra; In Re Shockley Forest Industries, Inc.,* 2 C.B. C.2d 756, 6 B.C.D. 642, 5 B.R. 160 (Bkrtcy.N. D.Ga.1980); *In Re Oakdale Associates,* 22 C.B.C. 130 (E.D.N.Y.1979); *In Re American Kitchen Foods,* 9 C.B.C. 537, 2 B.C.D. 715 (N.D.Me.1976).

At trial, First Trust presented evidence on the liquidation value of both the real estate subject to its mortgages, and the equipment, subject to its security interest. A deficiency in proof obviously exists as to the "going concern" value of the property. Mr. Roger Lane, a First Trust bank officer, appraised the real property and determined that its liquidation value is $200,000. He also testified that there are outstanding property taxes due in the amount of $39,000. Arthur Rosen appraised the debtor's equipment, but again, the appraisal was based solely on liquidation values. He concluded that the liquidation value of the equipment is $493,400,[2] with various reductions in price depending on the method of sale.[3] The defendant did not offer any rebutting testimony on value.

Not only has First Trust failed to provide going concern values, but Automat-

---

**1.** Although First Trust will receive a settlement amount of $335,000 from Automatic as guarantor on the debt, this figure cannot be used in the adequate protection formula. *See, In Re Kenny Kar Leasing, Inc.,* 2 C.B.C.2d 767, 6 B.C.D. 677, 5 B.R. 304 (Bkrtcy.C.D.Cal.1980).

**2.** When asked by the Court his opinion of the equipment's going concern value, Mr. Rosen

admitted that his appraisal was based only on liquidation values. However, he provided the Court with an approximate figure of $700,000.

**3.** If sold at an auction, the $493,400 figure should be reduced by 25–30%; if sold over time, the figure should be reduced by $75–80,000.

ic, in turn, failed to clearly address the adequate protection issue. The Code clearly places the latter burden on the debtor. The attention of both parties appears to have been deflected by the gravity of the prior issue. For this reason, relief from the automatic stay will be denied, but without prejudice to First Trust's reopening its case and scheduling a further hearing.

### III

The Court finds no merit in the defendant's first, second, third, fourth, fifth and sixth affirmative defenses and, therefore, they are dismissed.

### IV

### SETOFF

Automatic has asserted four counterclaims relating to a prepetition setoff by First Trust.

Automatic maintained two checking accounts with First Trust: an operating account and a payroll account. On January 29, 1982, Automatic deposited in its operating account a draft drawn on the Manufacturers and Traders Trust Company in the amount of $52,000 and, contemporaneously therewith, transferred $22,187.25 from the operating account to the payroll account. On the same day, First Trust debited Automatic's operating account in the amount of $40,988.06, that amount being the balance in the operating account.

Initially, Automatic alleges that the above described actions are not permitted by Section 553(a)(3) of the Bankruptcy Code which limits a creditor's right of setoff if:

... the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

While it is clear that the debt owed to the debtor was incurred within 90 days of bankruptcy and while the debtor was insolvent, it was not incurred for the purpose of obtaining a setoff right. The January 29th deposit was made in an unrestricted account and it was made in the ordinary course of the debtor's business. For these reasons, the Court finds that First Trust properly exercised its right of setoff, *See, Jensen v. State Bank of Allison,* 518 F.2d 1 (8th Cir.1975), and defendant's first and third counterclaims are, therefore, dismissed.

Automatic also claims that the setoff is void because First Trust failed to comply with Section 9–g(2) of the New York Banking Law. Section 9–g(2) requires the bank to provide the debtor with notice that it intends to assert its right of setoff on or before the date the right is being asserted. Contrary to the debtor's assertion, however, the record supports a finding that First Trust provided the debtor with notice as required under Section 9–g(2) of the New York Banking Law. Accordingly, the debtor's second counterclaim is dismissed.

Since the Court is not satisfied that the manner in which the proceeds of the setoff were applied affects its validity, the debtor's fourth counterclaim is dismissed.

So Ordered.