**In re LONDON TILES, INC., Debtor.**

**Bankruptcy No. 83–01157.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 21, 1983.

H. Buswell Roberts, Jr., Toledo, Ohio, for debtor.

MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before this Court upon the Motion for Authority to Use Cash Collateral filed by the Debtor-In-Possession and the Motion for Relief From Stay filed

by Huntington National Bank. The Court has held a Hearing on these Motions and, upon agreement between the parties, will make a ruling on both of these Motions based upon the evidence adduced at that hearing.

## FACTS

The Court has reviewed the testimony offered at the hearing along with the arguments of counsel. Based upon that review, the Court finds the following facts:

1. The Debtor-In-Possession is engaged in the business of manufacturing ceramic tile.

2. The Debtor-In-Possession currently is obligated to Huntington National Bank (the Bank) on two (2) promissory notes. The first is a term note in the amount of Four Hundred Fifty Thousand and no/100 Dollars ($450,000.00), on which there is owing Three Hundred Fifty-six Thousand Two Hundred Fifty and no/100 Dollars ($356,-250.00). The second is a demand note which the Debtor-In-Possession used as a revolving line of credit for its business operations. The original amount of this second note was Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00). However, subsequent to the filing of the petition, the Bank agreed to lend an additional Thirty-two Thousand and no/100 Dollars ($32,000.00) on this line of credit. The total due on this note is Two Hundred Eighty-two Thousand and no/100 Dollars ($282,000.00). The total indebtedness to the Bank is Six Hundred Thirty-eight Thousand Two Hundred Fifty and no/100 Dollars ($638,250.00). (Although the Bank has indicated it is primarily concerned with the demand note, for purposes of these Motions, the Court will consider the entire debt.)

3. The term note is secured by a first mortgage on the real estate and equipment owned by the Debtor-In-Possession. The plant is situated on that portion of the real estate that is located within the City of New London, Ohio. Another portion contiguously located to the plant site is in New London Township. The remaining portion of this real estate is a one hundred three (103) acre plot that is used by the Debtor-In-Possession for the excavation of the raw materials used in its operations.

4. The demand note is secured by a first lien on the Debtor-In-Possession's inventory and accounts receivable, as well as a second mortgage on the equipment and personal residence of the president of the Debtor-In-Possession. The residential portion of the second mortgage, which includes the 87.5 acres, the house, and all other improvements, is limited to One Hundred Thousand and no/100 Dollars ($100,000.00) in value.

5. The Debtor-In-Possession and the Bank had agreed, prior to the bankruptcy petition, that for purposes of determining whether or not the Bank was adequately secured, only eighty percent (80%) of the accounts receivable under ninety (90) days old and fifty percent (50%) of the value of the inventory would be considered.

6. The Debtor-In-Possession is and has always been current on its payments to the Bank on both notes.

7. The accounts receivable less than ninety (90) days old total One Hundred Seventy-seven Thousand Three Hundred Twelve and 38/100 Dollars ($177,312.38), eighty percent (80%) of which is One Hundred Forty-one Thousand Eight Hundred Forty-nine and 90/100 Dollars ($141,849.90). The accounts receivable over ninety (90) days old total Seventy-two Thousand Eight Hundred Forty-nine and 02/100 Dollars ($72,849.02). There was testimony that some of the older accounts were going to be difficult to collect.

8. According to the Bank's appraiser, the factory buildings, factory land, and the excavation site have a fair market value of Four Hundred Seventy Thousand and no/100 Dollars ($470,000.00) and a liquidation value of Three Hundred Thousand and no/100 Dollars ($300,000.00). He also testified that the personal residence has a fair market value of Two Hundred Twenty-five Thousand and no/100 Dollars ($225,000.00), and is subject to approximately Seventy Thousand and no/100 Dollars ($70,000.00) in superior mortgages to other creditors.

9. According to the Bank's other appraiser, the aggregate value of the equipment is Fifteen Thousand and no/100 Dollars ($15,000.00), and that the current inventory is valueless. This appraiser did not itemize the value of individual pieces of equipment and indicated that there was no distinction between the equipment's fair market value and liquidation value.

10. According to the Debtor-In-Possession's appraiser, the equipment has a fair market value of Two Hundred Nineteen Thousand Three Hundred Fifty and no/100 Dollars ($219,350.00) and a liquidation value of One Hundred Twenty-four Thousand Three Hundred Fifty and no/100 Dollars ($124,350.00). This assessment resulted from a detailed examination and itemization of the equipment.

## LAW

When a debtor initiates a bankruptcy proceeding an automatic stay is imposed which enjoins any action being taken against a debtor to collect on an obligation. 11 U.S.C. § 362(a). However, a party in interest may obtain relief from this stay pursuant to 11 U.S.C. § 362(d) which states that:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

   (A) the debtor does not have an equity in such property; and

   (B) such property is not necessary to an effective reorganization.

If a creditor requests a relief from stay, he must show either that he is not adequately protected, or that the debtor has no equity in the property and that the collateral is not required for an effective reorganization. *In re Shriver*, 33 B.R. 176 (Bkrtcy.N.D.Ohio 1983).

Adequate protection is not specifically defined by the Bankruptcy Code. However, examples of adequate protection are set forth in 11 U.S.C. § 361 which states in part:

"When adequate protection is required under section 362 ... of this title of an interest of an entity in property, such adequate protection may be provided by—

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

This section indicates that if a secured creditor will receive the total amount of what he is owed upon liquidation of the collateral, he will be deemed to be adequately protected. *In re Xinde Inter., Inc.*, 13 B.R. 212 (Bkrtcy.Mass.1981), *In re Automatic Voting Mach. Corp.*, 26 B.R. 970 (Bkrtcy.W.D.N.Y.1983). If the value of the collateral equals or exceeds the amount of the debt owed to the creditor, the creditor receives the equivalent of his interest in the property and is adequately protected. When considering whether or not to allow the use of cash collateral, the Court must make the same determination regarding adequate protection. *In re Simonin's Sons, Inc.*, 28 B.R. 707 (Bkrtcy.E.D.N.Y.1983).

In the present case, the Bank has presented evidence as to the value of all its security. Using only those appraisals and the formulas as to the accounts receivable and inventory, the Court finds that the liquidation value of the business real estate, business buildings, excavation site ($300,000.00), and current accounts receivable ($141,849.00) totals Four Hundred Forty-one Thousand Eight Hundred Forty-nine and no/100 Dollars ($441,849.00). The value of the residence is Two Hundred Twenty-five Thousand and no/100 Dollars ($225,000.00) (subject to $70,000.00 in prior non-related mortgages), One Hundred Thousand and no/100 Dollars ($100,000.00) of which is available to the Bank. If this is added to

the prior value of collateral, the total value so far is Five Hundred Forty-one Thousand Eight Hundred Forty-nine and no/100 Dollars ($541,849.00).

The president of the Debtor-In-Possession testified that the current inventory was worth approximately Six Hundred Thousand and no/100 Dollars ($600,000.00), and that One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) of that supply had been earmarked for sale under existing contracts. Therefore, the inventory has a value of at least One Hundred Fifty Thousand and no/100 Dollars ($150,000.00). If the fifty percent (50%) limitation is applied, the inventory is worth Seventy-five Thousand and no/100 Dollars ($75,000.00), which, when added to the figure for the other collateral, totals Six Hundred Sixteen Thousand Eight Hundred Forty-nine and no/100 Dollars ($616,849.00).

The Bank's other appraiser testified that the Debtor-In-Possession's equipment had an aggregate value of Fifteen Thousand and no/100 Dollars ($15,000.00). This Court is not inclined to accept that figure as an accurate assessment, in light of the fact that the appraisal does not itemize each item of equipment and does not include, in any detail, what the examination entailed. The Debtor-In-Possession's appraisal of the equipment includes an itemized listing of each unit along with a general description and statement of the unit's condition. It reflects a significant effort and appears to be a more accurate reflection of its actual value. This appraisal assigns to the equipment a fair market value of Two Hundred Nineteen Thousand Three Hundred Fifty and no/100 Dollars ($219,350.00), and a liquidation value of One Hundred Twenty-four Thousand Eight Hundred and no/100 Dollars ($124,800.00). However, the figure of Fifteen Thousand and no/100 Dollars ($15,000.00) will be used for the moment to bring the total value of the collateral to Six Hundred Thirty-one Thousand Eight Hundred Forty-nine and no/100 Dollars ($631,849.00).

If the figure of Six Hundred Thirty-one Thousand Eight Hundred Forty-nine and no/100 Dollars ($631,849.00) is accurate, the difference between the debt and the value of the collateral is Seven Thousand and no/100 Dollars ($7,000.00). In this event the Bank would be entitled to relief. However, this Court is not persuaded that this figure squarely reflects the property's true worth. Given the disparity between the appraisals of the equipment, this Court finds that the actual value of the equipment is at least sufficient to make up the Seven Thousand and no/100 Dollars ($7,000.00) difference between the Bank's total figure of Six Hundred Thirty-one Thousand Eight Hundred Forty-nine and no/100 Dollars ($631,849.00) and the debt of Six Hundred Thirty-eight Two Hundred Fifty Thousand and no/100 Dollars ($638,-250.00).

■ As previously indicated, the Bank's bottom line figure does not include any value for the accounts receivable over ninety (90) days old or the remaining inventory. It also assumes that liquidation value is the only value that can be considered. When making determinations of value, it is well settled that forced sale figures are not necessarily binding upon the Court, and that the Court is free to consider other assessments of worth. 2 *Collier on Bankruptcy* 15th ed. § 361.02. In the present case, if any of the fair market values were used, the Bank would be over secured. Even if the Court were to accept the Debtor-In-Possession's liquidation value of the equipment, the total worth of the security would be Seven Hundred Forty-one Thousand Six Hundred Forty-nine and no/100 Dollars ($741,649.00), thereby making the Bank over secured by One Hundred Three Thousand Three Hundred Ninety-nine and no/100 Dollars ($103,399.00).

■ In view of all the assets that are undisputedly available to the Bank, it cannot be concluded that the Bank is not adequately protected as to the entire debt it is owed. The president testified, and it is readily apparent that the collateral is necessary for an effective reorganization. Therefore, the Bank cannot prevail on the grounds set forth in 11 U.S.C. § 362(d)(2).

As has already been shown, the Bank is adequately protected, thereby precluding relief from stay based on 11 U.S.C. § 362(d)(1). However, because of other facts and circumstances which became apparent at the hearing, this Court is not going to dismiss entirely the Motion for Relief From Stay. Should the Bank feel that this matter requires further review by this Court, they may request a Hearing for that purpose. However, at the present time, it must be concluded that the Bank is adequately protected, and is not entitled to immediate relief from the stay. It is also concluded that the Debtor-In-Possession is entitled to use of the cash collateral.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they were specifically referred to in this Opinion.

It is ORDERED that the Motion for Relief From Stay be, and it is hereby, continued until further Order of this Court.

It is FURTHER ORDERED that the Motion for the Use of Cash Collateral be, and it is hereby, GRANTED, until further Order of this Court.